**Russell D. Garrett**, OSB #882111
russell.garrett@jordanramis.com
**Learon John Bird**, OSB #176218
learon.bird@jordanramis.com
JORDAN RAMIS PC
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070
Facsimile: (503) 598-7373

Attorneys for Candace Amborn, Trustee

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>GREEN OREGON ENTERPRISES, INC.,<br><br>Debtor. | Case No. 24-31948-dwh7<br><br>Chapter 7 |
| CANDACE AMBORN, solely in her capacity as Chapter 7 Trustee of the Bankruptcy Estate of Green Oregon Enterprises, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS LANPHERE, individually; LONDON STRICKLIN, individually; JEFFREY ARBON, individually; ROBERT "BOB" LANPHERE, JR., individually; GEORGENE ARBON, individually; PLATINUM PARACHUTE HOLDINGS, LLC; HERBAN RENEWAL, LLC; ARBON ENTERPRISES, INC. (d/b/a G M Dispensary or Green Martian Dispensary); PERENNIAL OPERATIONS TECHNOLOGY, LLC; NW HIGH OCTANE, LLC; LEGACY CANNABIS DISTRIBUTION, LLC; ABIDE OPERATIONS, LLC; GOLDEN PARACHUTE HOLDINGS, LLC; ALLIED PERSONNEL SERVICES, LLC; and LCD HOLDING, LLC fka Lanphere Construction and Development, LLC,<br><br>Defendants. | Adv. Proc. No.<br><br>COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS UNDER 11 U.S.C. §§ 544, 548, 550, and ORS 95.230<br><br>(Avoidance and Recovery of Fraudulent, Preferential, and Unauthorized Post-Petition Transfers; Recovery of Property In Specie; Declaratory and Injunctive Relief; Turnover; Constructive Trust; Accounting) |

COMES NOW Plaintiff, CANDACE AMBORN ("Plaintiff" or "Trustee"), solely in her capacity as Chapter 7 Trustee of the bankruptcy estate of Green Oregon Enterprises, Inc. (the "Estate") in In re Green Oregon Enterprises, Inc. (Case No. 24-31948-dwh7) (the "GOE Bankruptcy Case"), and through her undersigned attorneys, alleges as follows:

## NATURE OF THIS ACTION

1. This adversary proceeding is brought by the Trustee to avoid the fraudulent transfers by which value was stripped from Green Oregon Enterprises, Inc. (the "Debtor" or "GOE") and conveyed to insider affiliates and successor entities, and to recover the transferred property itself — most importantly, the Debtor's master leasehold interest in its retail premises — or, where the Court so orders, its value. The Defendants engaged in a coordinated scheme to transfer substantially all of GOE's valuable assets, contracts, and business operations to newly formed entities controlled by the same individuals, leaving GOE an empty shell unable to pay its creditors.

2. Before the Debtor's bankruptcy filing on July 12, 2024 (the "Petition Date"), the Debtor served as the management company for Green Mart, LLC ("Green Mart"), a retail cannabis dispensary generating $200,000 to $400,000 per month in gross revenue. GOE was the original lessee of the retail premises at 12745 SW Walker Road, Beaverton, Oregon, where Green Mart operated (and Defendant Arbon Enterprises currently operates) the retail store, and received management fees of approximately $60,000 per month. GOE, Green Mart, Herban Renewal, LLC ("Herban"), and Platinum Parachute Holdings, LLC ("PPH") operated under the common control of Douglas Lanphere ("Lanphere") and are referred to collectively herein as the "Original Entities." Lanphere, acting in concert with Robert Lanphere, Jr. ("Bob Lanphere"), London Stricklin ("Stricklin"), Jeffrey Arbon ("Mr. Arbon"), and Georgene Arbon ("Mrs. Arbon") (collectively, Lanphere, Bob Lanphere, Stricklin, Mr. Arbon, and Mrs. Arbon, the "Individual



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Defendants"), orchestrated the transfer of GOE's assets and revenue streams to Arbon Enterprises, Inc., NW High Octane, LLC, Legacy Cannabis Distribution, LLC, and Abide Operations, LLC (collectively, the "Successor Entities" or "Transferee Defendants").

3. The scheme involved the transfer of GOE's leasehold interest in the Walker Road premises (transferred to Abide Operations, LLC for grossly inadequate and circular consideration), the management fee revenue stream (approximately $60,000 per month), and substantially all other assets (collectively, the "Fraudulently Transferred Assets"). GOE's leasehold interest in the Walker Road premises, together with all rights of extension, renewal, replacement, and holdover appurtenant thereto and all tenancies derived therefrom, is referred to herein as the "Leasehold Interest." Stricklin controls Arbon Enterprises, which operates as a "mere continuation" of the Debtor's former operations at the same location, using the same employees, equipment, and customer base.

4. In addition to the Successor Entities, the Defendants utilized Perennial Operations Technology, LLC ("POT"), Golden Parachute Holdings, LLC ("GPH"), and Allied Personnel Services, LLC ("Allied") (collectively, the "Back-Office Entities") as the operational nervous system of the enterprise. These entities served as conduits for financial transactions, payroll processing, and other administrative functions that facilitated the fraudulent transfer scheme while obscuring the true ownership and control of the business operations.

5. Through this action, Plaintiff seeks to: (a) avoid the transfers as fraudulent under 11 U.S.C. §§ 544 and 548, or, in the alternative, as unauthorized post-petition transfers under 11 U.S.C. § 549; (b) recover, pursuant to 11 U.S.C. § 550(a), the transferred property itself — including the Leasehold Interest in specie — or, where the Court so orders, the value of the Fraudulently Transferred Assets; (c) avoid the insider lien that Lanphere caused to be perfected



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

against the Debtor's assets on the eve of these proceedings, and preserve it for the benefit of the Estate; (d) obtain a declaratory judgment that Abide is a mere continuation of, and successor to, the Debtor with respect to the Leasehold Interest, and is the alter ego of the Debtor as to the Leasehold Interest and its transfer; (e) obtain injunctive relief preserving the Leasehold Interest pending resolution of this action; and (f) obtain a money judgment against the Individual Defendants, including for conspiracy to defraud, aiding and abetting fraudulent transfers, and piercing the corporate veil.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 as this matter is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (E), (F), (H) and (O), as it involves the administration of the Estate, orders to turn over property of the Estate, proceedings to determine, avoid, or recover preferences, and proceedings to determine, avoid, and recover fraudulent conveyances.

7. Venue is proper under 28 U.S.C. §§ 1408 and 1409, as a matter arising in or under or related to the GOE Bankruptcy Case pending before this Court.

8. This adversary proceeding is filed pursuant to Federal Rules of Bankruptcy Procedure 7001(a) (proceedings to recover money or property), 7001(b) (proceedings to determine the validity, priority, or extent of an interest in property), 7001(g) (proceedings to obtain an injunction or other equitable relief), and 7001(i) (proceedings to obtain a declaratory judgment relating to any of the foregoing).

9. This adversary proceeding is timely commenced. The order for relief in the GOE Bankruptcy Case was entered upon the filing of the Debtor's voluntary petition on July 12, 2024, and this action is commenced within two years after entry of the order for relief, within the periods prescribed by 11 U.S.C. §§ 546(a) and 108(a), and within the applicable period of 11 U.S.C. §



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

549(d) as to the post-petition transfers alleged herein. The avoidance and recovery claims asserted herein arise under 11 U.S.C. §§ 544, 547, 548, 549, 550, and 551 and belong exclusively to the Trustee for the benefit of the Estate; they did not exist in, were not asserted in, and could not have been asserted in any prepetition or state-court action, including Washington County Circuit Court Case No. 24CV42167.

10. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiff states that this adversary proceeding is a core proceeding and that Plaintiff consents to the entry of final orders and judgment by the bankruptcy court. To the extent any claim asserted herein is determined to be non-core, or a claim on which the bankruptcy court may not constitutionally enter final judgment absent consent, Plaintiff consents to the entry of final orders and judgment by the bankruptcy court on such claim.

**THE PARTIES**

11. Plaintiff Candace Amborn is the duly appointed Chapter 7 Trustee in In re Green Oregon Enterprises, Inc., Case No. 24-31948-dwh7, filed on July 12, 2024, in the United States Bankruptcy Court for the District of Oregon. The Trustee brings this action on behalf of the Estate.

12. The Debtor, GOE, was an Oregon corporation registered with the Oregon Secretary of State on September 4, 2014. Lanphere was at all times GOE's majority and controlling shareholder and its President and, following the divestiture of Terry Wilson's 25% interest effective December 31, 2020, as fixed by the Awards described below, GOE's sole shareholder. GOE filed Articles of Dissolution on February 14, 2024. Although GOE's filing with the Oregon Secretary of State alleged that it was in the business of retail activity, GOE's primary purpose as part of the Enterprise was to serve as the management company for Green Mart in exchange for management fees of $60,000.00 per month. In contrast, GOE's revenue from sales of hydroponics and garden supplies



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

was significantly less. GOE was also the original lessee and holder of the master lease of the 12745 SW Walker Road location where Green Mart operated (and Defendant Arbon Enterprises currently operates) the retail store. Prior to its dissolution, GOE's primary place of business was located at 12745 SW Walker Road, Suite 100, Beaverton, Oregon 97005.

13. Defendant Douglas Lanphere is, and at all times since Wilson's divestiture has been, the sole member of the Original Entities (other than GOE) and the Back-Office Entities. Lanphere has at all times been GOE's majority and controlling shareholder and, since Wilson's divestiture, its sole shareholder. Lanphere was at one time a member of Arbon Enterprises. During at least a portion of the relevant time period, Lanphere resided at and/or owned the property located at 940 Winfield Street NE, Gervais, Oregon 97026. At all relevant times Lanphere was an insider of the Debtor within the meaning of 11 U.S.C. § 101(31) and ORS 95.200(7), as the Debtor's majority and ultimately sole shareholder, President, director, and person in control.

14. Defendant London Stricklin is a member of Arbon Enterprises. Stricklin is the owner of the assumed business name "G M Dispensary," which was the trade name for Arbon Enterprises, as listed with the OLCC, and later amended to "Green Martian Dispensary" on September 19, 2025, by Stricklin. Stricklin is also associated with Abide Operations LLC. Stricklin formerly held himself out as the Director of Operations for Green Mart and Herban. On information and belief, Stricklin has been an employee of Golden Parachute Holdings, LLC.

15. Defendant Mr. Arbon is a member of Legacy and a former member of Green Mart, Herban, and GPH. Mr. Arbon was also the managing member of Abide during the relevant time period when the fraudulent transfers were orchestrated.

16. Defendant Mrs. Arbon is the mother of Mr. Arbon. Mrs. Arbon is currently the sole member of NW High Octane, LLC and a former member of Green Mart and PPH. Mrs. Arbon has



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

entered into various agreements and passed consent resolutions on behalf of NW High Octane, LLC.

17. Defendant Platinum Parachute Holdings, LLC ("PPH") was a limited liability company organized under the laws of the State of Oregon, which registered on April 27, 2016. In 2018, PPH began operating as Green Mart's credit card processor as part of the enterprise. In the past, PPH's principal place of business has been 2955 NE Cornell Hillsboro, Oregon 97124, 940 Winfield Street NE, Gervais, Oregon 97026, 12745 SW Walker Road #100A, Beaverton, Oregon 97005, and 13575 SW Farmington Road, Beaverton, Oregon 97005. PPH filed Articles of Dissolution on February 14, 2024, and filed a Petition for Chapter 7 Bankruptcy with the United States Bankruptcy Court, District of Oregon, Case No. 24-30574-thp7 on March 2, 2024. PPH's bankruptcy case was closed on June 3, 2024. Although PPH filed Articles of Dissolution in February 2024, Lanphere continued to list PPH as his business in his email correspondence with Mark Seclahr of WeMove4U, in June 2024.

18. Defendant Herban Renewal LLC ("Herban") is a limited liability company organized under the laws of the State of Oregon and was registered with the Oregon Secretary of State on August 10, 2017. Herban filed Articles of Dissolution on February 14, 2024. Herban's business activity was and/or is agricultural production with sales to distributors and retail vendors. It was formed to obtain OLCC licenses and build out a production facility as part of the Original Enterprise. Herban's principal place of business has, at various times, been 940 Winfield Street NE, Gervais, Oregon 97026, 13625 SW Farmington Rd, Beaverton OR 97005, 2955 NE Cornell Hillsboro Oregon 97124 and 26444 NE Butteville Road, Aurora, Oregon 97002 (the "Farm Property"). The Farm Property is owned by LCD Holding, LLC, fka Lanphere Construction and Development, LLC ("LCD"), which is an entity owned by Robert Lanphere, Jr. ("Bob Lanphere"),



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

who is Lanphere's cousin. Upon information and belief, in permitting Herban and other entities to use the Farm Property and LCD's business address as principal places of business, Bob Lanphere facilitated the fraudulent transfer of operations from the Original Enterprise to the Successor Entities.

19. Defendant Arbon Enterprises, Inc. ("Arbon Enterprises") was registered as a limited liability company on April 28, 2023. Arbon Enterprises filed articles of conversion with the Oregon Secretary of State on September 17, 2024, and is now a corporation. Arbon Enterprises operates a retail store, under the name of G M Dispensary or Green Martian Dispensary, at 12745 SW Walker Road #100, Beaverton, Oregon 97005, the same address formerly used by Green Mart. Arbon Enterprises has also had its principal place of business at 13625 SW Farmington Rd, Beaverton, Oregon 97005, and 5441 S Macadam Avenue Suite R Portland Oregon 97239. Arbon Enterprises is not only operating an identical retail store at Green Mart's address, but also, on information and belief, uses or has used Green Mart's name, phone number, website (greenmartpdx.com or gmdispo.com), and Green Mart's goodwill/credibility. Stricklin is the president and secretary of Arbon Enterprises.

20. Defendant Perennial Operations Technology, LLC ("POT") was a limited liability company organized under the laws of the State of Oregon, wholly controlled by Lanphere, which was registered on May 5, 2020. POT's primary place of business is located at 26444 NE Butteville Road Aurora, Oregon 97002, and 2955 NE Cornell Hillsboro Oregon 97124. POT has been Lanphere's central financial hub, orchestrating the transfer of funds between the Original Entities and Successor Entities. Lanphere filed articles of dissolution for POT on February 1, 2025.

21. Defendant NW High Octane, LLC ("NW High") was a limited liability company organized under the laws of the State of Oregon, which registered on September 23, 2021, with



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

principal place of business at 26444 NE Butteville Rd, Aurora Oregon 97002. NW High's stated business was off road fuel sales. In actuality, NW High processed credit card transactions for Green Mart, Arbon Enterprises, and/or other affiliated entities. Mrs. Arbon was a member of NW High. Mrs. Arbon dissolved NW High on July 12, 2025.

22. Defendant Legacy Cannabis Distribution, LLC ("Legacy") is a limited liability company organized and existing under the laws of the State of Oregon, registered with the Oregon Secretary of State on January 19, 2021. Legacy's primary place of business was previously located at 26444 NE Butteville Rd, Suite 100, Aurora, Oregon 97002, and 12745 SW Walker Rd Suite 100 Beaverton Oregon 97005. Mr. Arbon is a member of Legacy. On information and belief, Legacy continues Herban's agricultural production operations at the Farm Property under Mr. Arbon's control, maintaining the same operations previously conducted by Herban.

23. Defendant Abide Operations LLC ("Abide") is a limited liability company organized and existing under the laws of the State of Oregon, registered with the Oregon Secretary of State on May 6, 2023. On January 25, 2024, for grossly inadequate and circular consideration as alleged below, Abide accepted an assignment of the master lease for the same retail space where Green Mart and GOE historically operated. Abide then subleased that same retail space to Arbon Enterprises. Abide's primary place of business is located at 12745 SW Walker Road #100A, Beaverton, Oregon 97005, and also at 13625 SW Farmington Road, Beaverton, Oregon 97005. Mr. Arbon has been a member of Abide. Stricklin is currently the managing member of Abide.

24. Defendant Golden Parachute Holdings, LLC ("GPH") was a limited liability company organized under the laws of the State of Oregon, registered with the Oregon Secretary of State on January 20, 2021. Lanphere was the sole member of GPH. In the past Mr. Arbon was a member of GPH. On information and belief, GPH received money from POT and NW High which was

then used to pay for the bills and provide financial support to the Original Entities and Successor Entities. Lanphere filed articles of dissolution for GPH on December 26, 2025.

25. Defendant Allied Personnel Services, LLC ("Allied") is a limited liability company organized and existing under the laws of the State of Oregon, registered with the Oregon Secretary of State on November 14, 2024. Like GPH, Allied's principal place of business is 13625 SW Farmington Road, Beaverton, Oregon and 2955 NE Cornell Hillsboro Oregon 97124. Lanphere is the sole member of Allied. On information and belief, Allied received money from NW High and that money was used, inter alia, for payroll of employees of Arbon / G M Dispensary / Green Martian Dispensary. Allied also received funds from GPH and POT in 2025.

26. Defendant Robert "Bob" Lanphere, Jr. ("Bob Lanphere") is Douglas Lanphere's cousin. Bob Lanphere is the sole member of LCD Holding, LLC, formerly known as Lanphere Construction and Development, LLC ("LCD"). LCD owns the real property located at 26444 NE Butteville Road, Aurora, Oregon 97002 (the "Farm Property"), which has been used by Herban, Legacy, POT, NW High, and other entities affiliated with the fraudulent transfer scheme as their principal place of business and/or as the site of cannabis production operations. Bob Lanphere, through LCD, leased the Farm Property to Herban and subsequently to Legacy, and facilitated the continuation of Herban's production operations through Legacy at the Farm Property. Upon information and belief, Bob Lanphere knew of the Judgment and of Lanphere's efforts to evade it, and nevertheless continued to provide the Farm Property and his active assistance to further the fraudulent transfer scheme.

27. Defendant LCD Holding, LLC, formerly known as Lanphere Construction and Development, LLC ("LCD"), is a limited liability company organized under the laws of the State of Oregon. Bob Lanphere is its sole member. LCD owns the Farm Property at 26444 NE Butteville



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Road, Aurora, Oregon 97002. LCD leased the Farm Property first to Herban (an Original Entity) for cannabis production operations, and subsequently to Legacy (a Successor Entity), enabling the continuation of the same production operations beyond the reach of creditors.

28. Lanphere is a statutory insider of the Debtor as alleged above. Each of the other Individual Defendants — Stricklin, Mr. Arbon, Mrs. Arbon, and Bob Lanphere — was, at all relevant times, a non-statutory insider of the Debtor and its affiliated entities: each had a close, longstanding personal or business relationship with Lanphere and with the enterprise, and each transacted with the Debtor and its affiliates at less than arm's length, as alleged herein. Bob Lanphere, as Lanphere's first cousin, is not a "relative" within the enumerated definitions of 11 U.S.C. § 101(45) or ORS 95.200; his insider status arises not from that definition but from the closeness of his relationship with Lanphere and the enterprise and the less-than-arm's-length character of the transactions alleged herein, including his provision of the Farm Property to successive iterations of the enterprise and the loans of approximately $800,000 that he made into the enterprise, obligations that he and entities he owns or controls have since asserted against the enterprise and its estates in varying and inconsistent amounts — including the claims of LCD Holding scheduled in the PPH bankruptcy case at $450,000 and $328,136.29 — the precise amounts, current balances, and payment histories of which are peculiarly within the knowledge of Bob Lanphere, LCD, and their affiliates.

## FACTUAL BACKGROUND COMMON TO ALL CLAIMS

### The Valuable Enterprise

29. Prior to the Petition Date, the Debtor served as the management company for a vertically integrated cannabis enterprise operated at 12745 SW Walker Road, Beaverton, Oregon (the "Retail Location"). Terry Wilson ("Wilson") and Lanphere created an integrated enterprise



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

that included a retail store (Green Mart), a production facility (Herban), a management company (GOE), and an entity to accept credit card payments (PPH) (the "Original Enterprise").

30. Herban was formed in 2017 and obtained an OLCC license to produce products that were sold to the public by Green Mart. Herban leased the Farm Property from LCD, using three of its approximately 15 acres of the Farm Property to grow agricultural products. Another seven acres of the Farm Property were used to grow grapes, which qualified the Farm Property for federal farm tax exemptions.

31. PPH began processing credit card payments on behalf of Green Mart in 2018. The Original Enterprise was designed for PPH to process Green Mart's credit card transactions and then transfer the funds into Green Mart's bank account. On information and belief, PPH failed to transfer all of the funds to Green Mart's account, retaining most of the credit card sales for other purposes that did not benefit Green Mart.

32. While Green Mart was the key revenue-producing retail entity, GOE was the critical infrastructure entity that held the master lease of the Retail Location.

33. Wilson and Lanphere agreed that distributions from the Original Enterprise were to be paid proportionally, 75% to Lanphere and 25% to Wilson.

**The Arbitration and Judgment**

34. Beginning as early as 2019, Lanphere undertook a series of actions intended to divest Wilson of his ownership interest in the Original Entities and the Original Enterprise. Lanphere has claimed that the Original Entities had no value but, in reality, the enterprise that Wilson helped establish and partially owned was worth millions before Lanphere stripped the assets and the Successor Entities continued to flourish in the same locations as the Original Entities. In fact, as the arbitrator expressly found, the fair value of the Original Enterprise as of December 31, 2020



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

was $5,000,000, and, consistent with that valuation, upon information and belief, the Original Entities generated monthly revenue up to $300,000.

35. From approximately July 2019 through May 2020, Wilson and Lanphere attempted to resolve their dispute through negotiations. Those negotiations failed to bring about any resolution.

36. Eventually Lanphere initiated litigation against Wilson, and the parties ultimately agreed to arbitrate the dispute.

37. Following a 3.5-year arbitration, arbitrator Jeffrey Edelson issued two arbitration awards on December 27, 2023 (hereinafter referred to jointly as the "Awards"). The Awards established that Wilson owned 25% of the Original Entities, ordered the Original Entities, jointly and severally, to pay Wilson $990,000, and awarded another $19,500 to Wilson's counsel for costs. The Awards further provided that Wilson no longer owned his interest in the Original Entities as of December 31, 2020. In the Arbitration, the arbitrator expressly found the fair value of the Enterprise as of December 31, 2020 to be $5,000,000, fixed the value of Wilson's 25% interest at $1,250,000, and credited against it $260,000 in interim distributions paid to Wilson after his December 31, 2020 resignation, yielding the $990,000 principal award.

38. One week after the Awards were entered, Wilson filed a Petition for Confirmation of Arbitration Award served on the Original Entities on January 10, 2024, in the Circuit Court of Oregon for the County of Washington in Douglas Lanphere vs. Terry Wilson, Case No. 24CV01124 (the "Judgment Case").

39. On January 11, 2024, the Original Entities filed, in the Arbitration, a Notice of Intent to Dissolve. Despite the Orders shifting Wilson's status from owner to creditor, the Notice states, "Wilson is not presently a known claimant of the Entities."



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

40. Such Notice also stated, "Wilson will receive 25% of distributable assets from the orderly winding up of the affairs of the Entities after creditors of the entities have been repaid." In other words, despite the Awards converting Wilson from an owner to a creditor, the Original Entities improperly treated him as an equity holder who would be paid after creditors rather than as a creditor entitled to priority payment over equity distributions.

41. On January 29, 2024, the Original Entities filed a Petition to Vacate Arbitration Award in the Judgment Case.

42. On April 1, 2024, the Washington County Circuit Court entered an Order and a Supplemental Order on April 18, 2024 (collectively the "Orders") confirming the Arbitration Awards and Denying the Original Entities' Petition to Vacate. On April 18, 2024, a Limited Judgment and Money Award was entered in favor of Wilson and against the Original Entities, including Green Mart (the "Judgment").

43. Neither the Orders nor the Judgment originally applied to PPH because of its then-pending Chapter 7 bankruptcy, but effective August 27, 2024, as the PPH Bankruptcy has been closed, the Orders and Judgment have been applied to PPH.

44. On May 2, 2024, Green Mart, GOE, and Herban filed a Notice of Appeal with the Court of Appeals of the State of Oregon of the Orders and Judgment (the "Appeal"). On January 9, 2026, upon motion by Green Mart's Chapter 7 Trustee Kenneth S. Eiler, the Court of Appeals dismissed the Appeal as to Green Mart.

45. The Judgment remains unsatisfied.

**Transferring the Retail Operations from Original Entities to Successor Entities**

46. To evade the Judgment, Lanphere orchestrated the transfer of the Debtor's most valuable asset, its Leasehold Interest in the Retail Location, to Abide and, through Abide, to



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Defendant Arbon Enterprises, an entity controlled by his close associate, Stricklin. These transfers were not arm's-length transactions. They were coordinated maneuvers among related individuals and entities to strip GOE of its assets and place them beyond the reach of the Judgment.

47. Before Wilson exited the Original Enterprise, approximately 70% of sales at Green Mart were made by credit card and processed by PPH. This amounted to monthly credit card revenues averaging over $200,000. In 2019, PPH ceased paying credit card receipts to Green Mart.

48. Yet just months after the Arbitration Awards issued in Wilson's favor, and though Green Mart was a going retail concern, PPH filed for bankruptcy protection on March 2, 2024. In that bankruptcy, Lanphere, as Managing Member for PPH, swore that in 2022, PPH had revenue of only $23,000, and just under $300,000 in 2023. He denied any transfers to insiders and claimed that PPH is approximately $800,000 indebted to "LCD Holding" (a company owned by Robert Lanphere, Jr.). He also disclosed a secured SBA loan but claimed not to know its value.

49. A retail purchase at Green Mart on March 11, 2024, revealed that PPH was no longer the entity processing credit card transactions. Rather, Defendant NW High was the entity named on the credit card receipt for the Green Mart sale. NW High was formed during Wilson's tenure in the Original Enterprise for the purpose of processing credit cards for Green Mart in the event PPH lost the ability to do so.

50. On information and belief, Lanphere intentionally shifted the most lucrative portion of the Original Enterprise (credit card transactions) from PPH to NW High and then claimed that PPH was insolvent as a means to avoid complying with the Judgment. PPH's bankruptcy case was closed on June 3, 2024, at the request of the Chapter 7 trustee. PPH's debts were not discharged.

51. Arbon Enterprises now operates an apparently identical business at the identical location (12745 SW Walker Road), the same premises GOE leased from Glider Ridge LLC. Until



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

recently, the Arbon Enterprises website explicitly traded on the Original Enterprise's goodwill, stating: "We opened our doors on December 1st, 2015," a date when only the Original Entities existed. Arbon Enterprises is, by its own admission, a mere continuation of the Original Enterprise's operations, using GOE's former leasehold premises and Green Mart's former trade identity.

**Fraudulent Transfer of GOE's Leasehold Interest**

52. GOE held the master lease on the Retail Location under a commercial lease dated July 1, 2015, as amended by a First Amendment dated July 1, 2020, a Second Amendment dated 2021, and a Third Amendment to Lease dated effective as of February 13, 2024 (collectively, the "Lease"), by and between Glider Ridge LLC ("Lessor" or "Master Lessor") and GOE ("Lessee"), for approximately 3,000 square feet of retail space at 12745 SW Walker Road, Beaverton, Oregon 97005, together with all rights of extension, renewal, replacement, and holdover thereunder. Lanphere was the original signatory to the Lease on behalf of GOE.

53. In or around March 2024, Lanphere, acting as President of GOE, caused GOE to execute the Third Amendment to Lease, effective retroactively as of February 13, 2024, which amended the permitted use of the Retail Location to authorize operation of a "state-licensed marijuana retail sales business." Lanphere executed this amendment on GOE's behalf while simultaneously orchestrating the transfer of GOE's Leasehold Interest out of GOE.

54. On or about January 25, 2024, Lanphere, acting on behalf of GOE as Assignor, caused GOE to execute an Assignment of Lease Agreement (the "Lease Assignment") transferring all of GOE's rights, title, and interest in the Lease to Abide for a stated purchase price of One Hundred Thousand Dollars ($100,000). The Lease Assignment provided for a down payment of Ten



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Thousand Dollars ($10,000) upon execution, with the remaining $90,000 balance to be paid in monthly installments.

55. The $100,000 in stated consideration was illusory and circular. As admitted by Abide, Lanphere himself offered a $100,000 loan to Abide to fund the purchase price. The loan was memorialized in a Promissory Note dated January 25, 2024, under which Abide, as Borrower, purported to owe $90,000 to GOE as Payee — an entity controlled by the same Douglas Lanphere who had arranged the entire transaction. Thus, Lanphere — acting simultaneously as President of GOE (the transferor) and as the source of the loan funding the purchase price — engineered a transaction in which no independent value actually flowed into GOE.

56. As admitted by Mr. Arbon, Lanphere presented the document to Mr. Arbon on an urgent basis, representing that the assignment "had to happen in order to keep Jami's dream alive," and that Arbon "did not investigate the value of the assignment or otherwise conduct any investigation into the details of the document he was asked to sign." Arbon further stated that he "did not learn until later that Lanphere had listed him as the manager of Abide Operations LLC with the Secretary of State."

57. Mr. Arbon lacked authority to bind Abide when he signed. By Abide's own sworn account, set forth in its June 22, 2026 interrogatory responses in the related adversary proceeding pending in the bankruptcy case of Green Mart, LLC (Case No. 24-32481-thp7), captioned Wilson v. Lanphere, et al., Adversary Proceeding No. 26-03020-thp (the "Green Mart Adversary Proceeding"), Abide's membership chronology was as follows: Stricklin was Abide's sole member from June 5, 2023; Mr. Arbon became managing member on February 16, 2024; Stricklin was readmitted as a member on August 2, 2024; and Stricklin was removed as a member on October 4, 2024. Mr. Arbon executed the January 25, 2024 Lease Assignment, and the February 15, 2024



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Storage Agreement described below, as Abide's "Managing Member" — in each case before, by Abide's own sworn account, he held that position. The execution of the instruments effecting the transfer of the Debtor's most valuable asset by a signatory without authority to bind the transferee is further evidence that the Transfers were not arm's-length transactions, and bears on whether the transfer of the Leasehold Interest was ever validly completed.

58. Lanphere thereafter caused GOE to enter into an Assignment and Assumption of Lease and Landlord Consent (the "Assignment Instrument"), made "effective retroactively as of March 1, 2024," among Glider Ridge LLC (Lessor), GOE (Lessee and Prior Sublessor), Green Mart, LLC (Prior Sublessee), Abide (Assignee), and Arbon Enterprises LLC (Sublessee). Under this instrument, GOE purported to assign its Leasehold Interest to Abide, and Abide purported to sublease the Retail Location to Arbon Enterprises, which then commenced cannabis dispensary operations at the same premises. Lanphere signed this instrument in his capacity as President of GOE and also as the signatory for GOE in its capacity as Prior Sublessor, and separately executed a Guarantor Consent in his individual capacity.

59. The Assignment Instrument is undated as to its actual execution. It recites only a retroactive effective date of March 1, 2024; no date of execution appears on its face; and the instrument was executed at a time or times presently unknown to Plaintiff.

60. Abide's entry into the Assignment Instrument, and into the Sublease described below, was not ratified and approved by Abide's sole member and manager until December 2024 — more than five months after the Petition Date. In a Unanimous Written Consent of the Sole Member and the Manager of Abide Operations LLC, executed "as of the ___ day of December 2024" with the day left blank, Jeffrey Arbon, as Abide's sole member and manager, purported to ratify and approve "the Company's entry into the Lease Assignment and the Sublease" and to authorize



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

himself to execute and deliver all documents necessary to consummate them. Abide has since sworn, in its June 22, 2026 interrogatory responses, that "Doug Lanphere forged Jeffrey Arbon's signature on documents." Whether the signatures on the December 2024 consent are genuine is accordingly unknown to Plaintiff. If genuine, the consent is a post-petition ratification of the transfer of Estate property; if not genuine, Abide's entry into the Lease Assignment and the Sublease was never validly authorized at all. In either event, the transfer of the Leasehold Interest was not completed and authorized before the Petition Date.

61. By a Sublease dated March 4, 2024, with a term stated to commence retroactively on March 1, 2024, Abide, as Sublessor, purported to sublease the Retail Location to Arbon Enterprises, as Sublessee (the "Sublease"). By its own terms, the Sublease's effectiveness was "conditioned on and subject to Master Lessor's execution of the Consent of Master Lessor attached to" the Sublease, and the agreement to sublease was made "[s]ubject to Master Lessor's written consent."

62. Notwithstanding the dates borne by the foregoing instruments, Green Mart continued to occupy and operate a retail cannabis dispensary at the Retail Location for many months thereafter, under its own active OLCC license. On January 23, 2024, Lanphere signed a request to surrender Green Mart's OLCC retail license, license no. 050-10026091C87. The OLCC did not accept the surrender; on May 31, 2024, the OLCC stated that it would not accept the surrender at that time and that Green Mart's license would remain active. Green Mart's license ultimately terminated by expiration on October 13, 2024—approximately three months after the Petition Date. Green Mart's right to occupy the Retail Location derived solely from its sublease from GOE dated May 9, 2016.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

63. Green Mart thus continued to occupy and operate the dispensary at the Retail Location from the dates borne by the Assignment Instrument and the Sublease through on or about October 13, 2024 (the "Gap Period"). If the Leasehold Interest had in fact been assigned from GOE to Abide on the dates those instruments bear, Abide would have become Green Mart's sublandlord as of that date, and Green Mart's continued occupancy and operation of the dispensary throughout the Gap Period would necessarily have been governed by some agreement between Green Mart and Abide defining that relationship and the rent or other consideration owed for it.

64. No such agreement exists. No sublease, license, occupancy agreement, attornment, or agreement to pay rent between Green Mart and Abide governing the Gap Period appears anywhere in the documents produced by any Defendant, and no Defendant has identified any payment of rent or other consideration made by or on behalf of Green Mart to Abide during the Gap Period. The absence of any arrangement governing Green Mart's continued occupancy—and the absence of any rent flowing to the purported new leaseholder from the operator in possession—confirms that Abide exercised none of the incidents of ownership of the Leasehold Interest it purportedly acquired, and that the purported assignment was a transfer in name only for the benefit of Lanphere.

65. Moreover, by purporting to sublease the Retail Location to Arbon Enterprises on or about March 4, 2024, while Green Mart was still occupying and operating the dispensary there, Abide purported to grant Arbon Enterprises possessory rights to premises that Green Mart was then occupying and operating—a grant that Abide could not have delivered. The Transferee Defendants have admitted the coordinated character of the resulting handoff, alleging in their June 22, 2026 Answer in the Green Mart Adversary Proceeding that Stricklin and Arbon Enterprises "made plans to open a new dispensary at the same location," "invested substantial resources in



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

preparing for the new license to become active immediately following the expiration of Green Mart's license," and intended for Arbon Enterprises to "commence operations immediately" upon that expiration.

66. In the alternative to the allegations that the transfer of the Leasehold Interest occurred before the Petition Date, Plaintiff alleges on information and belief that the transfer of the Leasehold Interest was not executed, completed, or effective until after the Petition Date, as evidenced by, among other things, the absence of any execution date on the face of the Assignment Instrument, the December 2024 post-petition ratification of Abide's entry into the Lease Assignment and Sublease, and the absence of valid authorization for Abide's entry into those instruments before the Petition Date, in which event the Leasehold Interest was property of the Estate under 11 U.S.C. § 541 on the Petition Date and its transfer is avoidable under 11 U.S.C. § 549 as alleged in the Fifth Claim for Relief.

**The Master Lessor's Express Non-Release of GOE: An Assignment Without a Novation**

67. The Master Lessor did not release GOE. Section 3 of the Assignment Instrument provides that the Lessor consents to the assignment and to GOE's transfer of occupancy "without releasing or waiving any rights Lessor may have against Lessee under the Lease, whether arising before or after the Effective Date," and that GOE, as Lessee, "shall remain fully and primarily liable for all obligations under the Lease." Section 3 further provides that the Lessor's consent "shall apply only to the assignment and assumption contemplated by this Assignment Instrument," shall not "be deemed to be a consent to any other assignment, sublease or other transfer of the Lease," and shall not be construed as a waiver of the Lessor's "right to require strict compliance with the provisions of Section 6 of the Lease in connection with any further assignment, sublease or other transfer of the Lease."



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

68. In the same instrument, Lanphere executed a Guarantor Consent in his individual capacity, reaffirming his personal guaranty of "full payment and performance of the Lessee (including Assignee) under the Lease." The Consent of Master Lessor attached to the Sublease likewise provides that the "Sublessor is not released from its obligations under the Master Lease in any respect" and that the Master Lessor's consent "will not be deemed a consent to any future sublease of the Subleased Property or assignment of the Master Lease."

69. The transaction was accordingly an assignment without a novation: GOE never left privity of contract with the Master Lessor, and it remained fully and primarily liable for every obligation under the Lease, while the entire benefit of the Lease — the right to occupy and profit from the Retail Location — was conveyed away for circular and illusory consideration. GOE retained every burden of the Lease and surrendered its entire value. Avoidance of the transfer and recovery of the Leasehold Interest in specie would restore the Leasehold Interest to an estate that never left privity with the Master Lessor, with no novation to unwind and the original guaranty intact; and an order restraining any further assignment, transfer, or encumbrance of the Leasehold Interest pending this action would do no more than preserve the status quo that the Assignment Instrument itself requires.

70. On or about February 15, 2024, Abide and GOE entered into a Storage Agreement under which Abide agreed to store GOE's "inventory, furniture, and fixtures" at the Retail Location "pending determination by a bankruptcy court trustee regarding liquidation." The Storage Agreement was signed by Mr. Arbon as Managing Member of Abide and by Douglas Lanphere as President of GOE. This agreement demonstrates Lanphere's awareness, as early as February 2024, that bankruptcy proceedings were contemplated, while he was simultaneously stripping GOE of



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

its most valuable assets. The payments and personal property that are the subject of the Storage Agreement remain unaccounted for.

**The March 2024 Insider Lien Against the Debtor's Assets**

71. On March 13, 2024 — eleven days after PPH's March 2, 2024 bankruptcy petition, and while the Original Entities were dissolving and their assets were being transferred as alleged herein — Lanphere caused a UCC-1 financing statement, Oregon Secretary of State Filing No. 93810414, to be filed against the Debtor, naming Green Oregon Enterprises, Inc. as debtor and Lanphere, individually, as secured party, and purporting to perfect a security interest in the Debtor's assets in favor of Lanphere (the "Insider Lien").

72. The Insider Lien recites on its face that it was filed "For Loans to the Company between 2019 and 2023 in the Amount of $313,438.33" — purported antecedent obligations owed to Lanphere. On information and belief, the Insider Lien was perfected while the Debtor was insolvent; was perfected within one year before the Petition Date, at a time when Lanphere was an insider of the Debtor; and enabled Lanphere to receive more than he would receive in a Chapter 7 liquidation had the transfer not been made. On information and belief, the Insider Lien was granted and perfected for no contemporaneous consideration and with actual intent to hinder, delay, or defraud the Debtor's creditors by encumbering whatever assets remained in the Debtor after the transfers alleged herein.

73. The Insider Lien clouds the Estate's title to its assets, including assets recovered or recoverable in this proceeding, and its avoidance and preservation for the benefit of the Estate are necessary to the administration of the Estate.

74. GOE's bankruptcy Schedule D also affirmatively misrepresented the nature of the Insider Lien: in completing Official Form 206D, Lanphere listed himself as the holder of a secured



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

claim of $326,695.00 secured by the Insider Lien, and answered “No” to the question “Is the creditor an insider or related party?” — notwithstanding that the secured party identified on the underlying financing statement is Lanphere, individually. Lanphere is GOE’s sole shareholder, President, and the person in control of the Debtor — the paradigmatic statutory insider under 11 U.S.C. § 101(31). This false answer was made under penalty of perjury.

**Bad-Faith Bankruptcy Filings to Delay Collection**

75. Wilson commenced an action in the Circuit Court of Oregon for the County of Washington (Case No. 24CV42167) (the “Fraud Complaint”) on August 30, 2024.

76. GOE had already filed a Chapter 7 bankruptcy petition on July 12, 2024 (Case No. 24-31948-dwh7). Upon information and belief, Lanphere caused GOE to file for bankruptcy to place GOE’s remaining assets, including its causes of action, beyond the reach of Wilson and other creditors, and to frustrate collection of the Judgment.

77. Less than a week after Wilson filed the Fraud Complaint, on September 6, 2024, Green Mart filed its own Chapter 7 bankruptcy case (Case No. 24-32481-thp7).

78. The automatic stays imposed by the GOE and Green Mart bankruptcy cases halted Wilson’s efforts to serve or otherwise pursue the Fraud Complaint against the defendants.

79. Upon information and belief, Lanphere caused the serial bankruptcy filings of PPH (March 2, 2024), GOE (July 12, 2024), and Green Mart (September 6, 2024) as part of his ongoing scheme to avoid Wilson’s legitimate efforts to collect on his Judgment and to delay Wilson’s prosecution of his fraud claims.

**Concealment and False Statements in the Debtor’s Bankruptcy Filings**



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

80. The Debtor's bankruptcy schedules and Statement of Financial Affairs ("SOFA"), signed by Lanphere under penalty of perjury, concealed and mischaracterized the very transfers at issue in this proceeding.

81. Schedule G of the Debtor's schedules disclosed no executory contracts or unexpired leases, thereby concealing the Lease, the Lease Assignment, the Assignment Instrument, and GOE's continuing primary liability under the Lease.

82. Item 13 of the Debtor's SOFA characterized the disposition of the Debtor's leasehold as having been "surrendered on termination," mischaracterizing what was in fact an assignment, for circular consideration, to an insider-controlled entity, under which GOE remained fully and primarily liable.

83. The Debtor's Schedule A/B omitted the approximately $90,000 note receivable owed to GOE by Abide under the Promissory Note dated January 25, 2024 — the very instrument constituting the purported consideration for the Lease Assignment.

84. The Debtor's schedules and SOFA answered "None" or "No" to questions concerning transfers to insiders within the applicable look-back periods, notwithstanding the transfers alleged herein. In September 2024, the Debtor amended its filings, altering, among other things, the characterization of Lanphere's insider status.

85. GOE's SOFA, signed under penalty of perjury, contains a direct internal inconsistency regarding insider payments. SOFA Item 30 asks: "Within 1 year before the filing of this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?" Lanphere answered "No." Yet SOFA Item 13 — in the same document signed the same day — discloses that, on June 7, 2024, the Debtor transferred a 2017 Subaru Outback to Douglas Lanphere (identified as the



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Debtor's Owner) for $0.00 consideration. On information and belief, this is the same 2017 Subaru Outback that Lanphere, less than three months earlier, had listed as collateral securing the Insider Lien in his own favor on the March 13, 2024 UCC-1 financing statement, which identifies a "2017 Subaru Outback VIN 4S4BSETC2CH3298353" — so that Lanphere first encumbered the vehicle as the Debtor's property to secure his own purported claim, and then caused the Debtor to convey it to himself for no consideration. That transfer is, on its face, a transfer to an insider within the one-year look-back window, directly contradicting the "No" answer to Item 30.

86. The concealment and mischaracterization of the Debtor's assets and transfers in sworn filings are badges of fraud evidencing the actual intent alleged herein.

**Lanphere's Pattern of Obstruction and Manipulation of Legal Proceedings**

87. Since Wilson obtained the Judgment, Lanphere has engaged in a sustained pattern of obstruction designed to frustrate Wilson's collection efforts and conceal the fraudulent transfer of assets. This pattern includes serial bad faith bankruptcy filings of PPH, GOE, and Green Mart, violation of court orders, destruction of records, evasion of service, and false representations to multiple courts about his location and the impact of his medical condition on his ability to participate in legal proceedings.

88. On May 29, 2024, Terry Wilson served a Writ of Garnishment on WAUNA Federal Credit Union, seeking to garnish a Green Mart checking account. In its Motion to Quash said writ, Green Mart presented a spreadsheet, which revealed that Lanphere was continuing to make personal withdrawals from Green Mart.

89. On June 10, 2024, the Circuit Court of Oregon for the County of Washington issued an Order for a Judgment Debtor Examination of Lanphere that required him "to appear at a judgment debtor examination by no later than June 21, 2024." It further ordered Green Mart, GOE, and



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Herban to produce financial statements, documents identifying assets of Green Mart, GOE, and Herban, an accounting of assets that Green Mart, GOE, and Herban had transferred since January 1, 2022, loan applications, contracts, and other financial documents, no later than June 19, 2024. The Order permitted Wilson "to take additional examinations of third-party witnesses," specifically including Stricklin. The Order restrained Green Mart, GOE, and Herban "from selling, transferring or in any other manner disposing of any of the Entities' property that is subject to execution pending the completion of the examination."

90. Lanphere, Green Mart, GOE, and Herban did not comply with the Order. Instead, soon after receiving this Order, Lanphere wrote to Mark Seclahr at wemove4u1996@gmail.com, stating that he needed "a 13-foot trailer loaded with records moved from Beaverton, Oregon to lake Elsinore California." Lanphere noted that he was "in a hurry to get this done." To date Lanphere has not produced the records transported to California.

91. On June 20, 2024, Lanphere appeared via Zoom for the Judgment Debtor Exam and testified, under oath, that he was "highly intoxicated" on narcotics. Lanphere further testified that he could not produce any additional documents because they had been moved to California weeks earlier. Lanphere testified that he shut down the Original Entities' QuickBooks accounts in February 2024.

92. Thereafter, on June 21, 2024, the Original Entities produced bank statements from 2022 and 2023 and also produced records revealing that the QuickBooks accounts were closed on May 30, 2024, one day after the WAUNA garnishment was served.

93. Oregon Secretary of State records show that Lanphere used the alias "Philip Wesley" to register POT as an entity under penalty of perjury. When questioned during a creditors' meeting, Lanphere admitted that "Philip Wesley" does not exist.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

**Lanphere's Adverse Domination of the Debtor**

94. From GOE's formation through the Petition Date, Lanphere dominated and controlled the Debtor. Lanphere was at all times GOE's majority and controlling shareholder and its President. Terry Wilson, the only other shareholder, held a 25% minority interest; his role in the enterprise was as manager of the retail operations, while Lanphere at all times controlled GOE — the entities' management company — and the enterprise's finances and governance. From 2019 forward, Wilson was Lanphere's adversary in the negotiations, litigation, and Arbitration alleged above. Under the Stipulated Fair Value Hearing Order entered in the Arbitration, Lanphere took over control of the entities' operations, and Wilson resigned and relinquished his interests in all four Original Entities effective December 31, 2020, after which Wilson had no authority, direct or indirect, over anything any of the Original Entities did. The arbitrator, taxing authorities, and third parties thereafter treated Lanphere as the sole owner, officer, director, member, and manager of the Original Entities. From and after that divestiture, Lanphere was GOE's sole shareholder and — following Bob Lanphere's June 2020 resignation as a director — its sole director and sole decision-maker. At no time did GOE have any shareholder, director, officer, or agent independent of Lanphere who was aware of the claims alleged herein and both able and willing to assert them on the Debtor's behalf: the only other stakeholder managed retail operations, was then Lanphere's litigation adversary, and was ultimately divested and excluded entirely.

95. The one recorded instance of resistance proves the domination. In June 2020, GOE's board of directors and newly retained independent corporate counsel determined that Lanphere's self-dealing was improper, repealed the bylaw amendments that had enabled it, and revoked the resolution authorizing GOE to pay Lanphere's personal attorneys. Within weeks, Lanphere overrode that resistance: on June 25, 2020, invoking his majority-shareholder position, he



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

unilaterally ratified his own compensation increase, back-pay award, and promissory note. Thereafter Lanphere selected and controlled the entities' counsel, caused the entities' boards — including a board consisting only of Lanphere and Bob Lanphere — to act at his direction, and, before, during, and after the Arbitration, ran the Original Entities as instruments of his personal interests rather than their own. Even the constraints of the Arbitration did not check him: while the valuation proceedings were pending — and notwithstanding arrangements purporting to confine the entities to the ordinary course of business — Lanphere continued to pay himself, preferred his own purported loans on nonstandard terms, and directed the entities' bookkeeping and bill-paying functions to act at his sole instruction.

96. Lanphere's domination of the Debtor was intentional, willful, and pervasive, and it was exercised adversely to the Debtor, for the benefit of Lanphere and his confederates. As alleged herein, Lanphere caused the Debtor and its affiliates to violate the June 10, 2024 order compelling production of records and restraining transfers; closed the enterprise's QuickBooks accounts one day after service of the WAUNA garnishment; caused a trailer loaded with the entities' records to be transported to Lake Elsinore, California, in the face of a court order compelling their production, and has never produced those records; registered POT with the Oregon Secretary of State under the fictitious name "Philip Wesley," under penalty of perjury; made false statements under penalty of perjury in the Debtor's bankruptcy schedules and SOFA, including denying his own insider status with respect to the Insider Lien; forged Jeffrey Arbon's signature on transaction documents, according to Abide's own sworn interrogatory answers; granted himself self-serving security interests against the Debtor's assets, including the Insider Lien; caused the Original Entities to enter into non-arm's-length arrangements for the benefit of Bob Lanphere and LCD — including the Farm Property lease and the greenhouse financing structure alleged herein — and then to



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

default on them by design; siphoned the Debtor's funds to himself and to Bob Lanphere and LCD through the distributions, purported loan repayments, and conduit payments alleged herein; and deceived his own business partners, transferees, and employees, who have admitted in filed pleadings that Lanphere "defrauded each of them into signing various documents and agreements."

97. Because Lanphere — the only person with knowledge of and control over the Debtor's claims — was himself the wrongdoer, the Debtor was incapable of discovering or asserting the claims alleged herein at any time before the Trustee's appointment. The Debtor first acquired a decision-maker independent of Lanphere upon the appointment of the Trustee following the July 12, 2024 Petition Date. Accordingly, under the doctrine of adverse domination and the discovery rule, all limitations periods applicable to the Estate's claims against Lanphere, and against those who participated in, facilitated, or benefited from his misconduct, were tolled until, at the earliest, the Petition Date, and this action is timely as to all such claims.

98. Lanphere's interests were at all relevant times wholly adverse to the Debtor: he acted not for the Debtor's benefit but to strip the Debtor of its assets for himself and his confederates. Lanphere's knowledge and misconduct are therefore not imputed to the Debtor or to the Trustee under the adverse-interest principle, and no Defendant who is an insider of the Debtor, or who participated in, facilitated, or benefited from the misconduct alleged herein, may invoke the Debtor's imputed conduct — including under the doctrine of in pari delicto — as a defense to the claims of the Estate.

99. Lanphere's evasion is ongoing. Upon information and belief, Lanphere has departed Oregon; the enterprise's records were relocated to California in mid-2024 through the moving company Lanphere engaged while continuing to hold the dissolved PPH out as his business.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

**Lanphere's Connection to the Arbon Family and the Original Entities' Continuing Scheme to Avoid Paying the Award/the Judgment**

100. Lanphere has a long connection to the Arbon family. Mrs. Arbon was the mother of, and Mr. Arbon was the brother of, Jami Arbon, now deceased. Jami Arbon was Lanphere's domestic partner prior to her death. Jeffrey and Mrs. Arbon have been members of and have been affiliated with multiple Defendants. On information and belief, Arbon Enterprises is named after the Arbon family.

101. According to Oregon Secretary of State records, at one time, Arbon Enterprises' members were associates of Lanphere, including Stricklin, its mailing address was the same as Herban's, and its principal place of business was the same address utilized by Green Mart and GOE, 12745 SW Walker Road #100, Beaverton, Oregon 97005. Arbon Enterprises uses, or used, a trade name of "Green Mart LLC." Additionally, Arbon Enterprises used Green Mart's name on leafly.com, where a search for G M Dispensary yielded the following result on July 17, 2024:






JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

102. Arbon Enterprises also utilizes the same telephone number as Green Mart, and as recently as August 2025, Arbon Enterprises' website address was greenmartpdx.com, which was recently updated to gmdispo.com. Arbon Enterprises continues to utilize the Green Mart logo on that website, but since approximately August 19, 2024, has referred to itself as G M Dispensary on that website. Arbon Enterprises is capitalizing on Green Mart's goodwill, location, name recognition, and market presence. Arbon Enterprises' website stated: "GM Dispensary is Leafly's #1 rated dispensary for Spring 2018, Summer & Winter 2017! We opened our doors on December 1st, 2015, with no signs or graphics on the building and closed the first day with total sales of $420!" (This text has since been removed from the website.)

103. These representations by Arbon Enterprises were inaccurate and misleading. Arbon Enterprises was not registered as an entity with the Oregon Secretary of State until April 28, 2023, and did not begin operations until June 2024, yet until recently it claimed credit for Green Mart's December 1, 2015, opening and subsequent operational history and awards. This appropriation of Green Mart's history, reputation, and goodwill demonstrated Arbon Enterprises' role as a mere continuation of Green Mart's operations under a different name to evade Wilson's Judgment.

104. NW High's and GPH's registered principal places of business are the same as PPH's principal place of business, 13575 SW Farmington Road, Beaverton, Oregon 97005.

105. Oregon Secretary of State records show that Legacy and POT are located at the same address that was previously used by Herban, the Farm Property. On information and belief, Legacy has assumed or sought to assume Herban's agricultural production operations at the Farm Property, continuing the same growing activities that generated revenue for the Original Enterprise. This represents a direct continuation of the enterprise's vertical integration, with Legacy intended to serve the production function previously performed by Herban. Bob Lanphere, through LCD,



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

made this continuation possible by leasing the Farm Property to Legacy and providing the regulatory consents necessary for Legacy to obtain an OLCC producer license at that location. That license application was never approved.

**Bob Lanphere's Facilitation of the Fraudulent Transfer of Production Operations**

106. After Lanphere dissolved Herban on February 14, 2024, the same Farm Property owned by Bob Lanphere's entity, LCD, was used to continue Herban's cannabis production operations through Legacy Cannabis Distribution, LLC. Legacy was formed in 2021 with the stated purpose of obtaining a producer license from the OLCC and operating a business on property owned by Bob Lanphere. Although Mr. Arbon was listed as the sole member of Legacy on paper, Douglas Lanphere took actions on behalf of Legacy and directed individuals to act on its behalf, including by creating a fraudulent email account (jeff@legacycannapdx.com) impersonating Mr. Arbon to communicate with the OLCC and others.

107. The facts alleged above show that the Original Entities have transferred to the Successor Entities, Lanphere, Bob Lanphere, LCD, Stricklin, Mr. Arbon, Mrs. Arbon, and possibly other affiliated companies and/or individuals (the "Transferees"), the entire Original Enterprise and all its valuable assets, including the Original Entities' intellectual property, customer base, business location and goodwill and the proceeds derived from the same. Further facts show that the Original Entities and Transferees have done so (a) to avoid payment of the Judgment to Wilson, (b) without receiving reasonably equivalent value in return, and (c) in a way that has caused the Original Entities to be insolvent.

**GOE's Undisclosed Greenhouse Assets**

108. GOE's own books and tax filings reflect that GOE, not merely Herban or PPH, carried a substantial capitalized interest in greenhouse improvements associated with the Farm Property



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

owned by LCD. GOE's 2023 U.S. Corporation Income Tax Return, Form 1120, was transmitted to Lanphere as GOE's President under a cover letter dated July 15, 2024 — three days after the Petition Date — for execution and electronic filing.

109. GOE's Federal Depreciation Schedule attached to that return lists, among GOE's furniture-and-fixtures assets, an asset described as "GREENHOUSE," with an original cost basis of $525,985.00, fully depreciated as of December 31, 2023, and a second asset described as "GREEN HOUSE – HERBAN," placed in service on December 31, 2023 — the last day of GOE's tax year — with a cost basis of $7,119.00. These two assets are included within GOE's reported ending balance of "buildings and other depreciable assets" of $1,259,816.00 as of December 31, 2023.

110. The $525,985 cost basis of the "GREENHOUSE" asset on GOE's 2023 depreciation schedule corresponds to the $525,984.79 fixed-asset entry for "Green Houses – Herban" that appeared on GOE's own balance sheet as of December 31, 2021, confirming that GOE, rather than Herban, PPH, or LCD, held and depreciated this asset on its own books for years preceding the Petition Date. PPH's own books likewise carried a fixed-asset entry styled "Green Houses - Herban," in the amount of $778,892.38, on a balance sheet dated August 12, 2023. To the extent the same or overlapping greenhouse improvements were carried on the books of more than one of the commonly controlled entities, that double-booking does not diminish GOE's interest; it is a further instance of the disregard of corporate formalities alleged herein, and the Estate's claims extend, in any event, to the greenhouse improvements paid for with GOE's funds and reflected on GOE's own books and tax filings.

111. GOE's ownership of the greenhouses is independently confirmed by the greenhouse vendor's own records. The Growers Supply / FarmTek sales order for the greenhouse structures,



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

in the total amount of $332,547.25, identifies the purchaser and ship-to party as "Doug Lanphere, Green Oregon Enterprises Inc, 12745 SW Walker Road, Suite 100." The greenhouses were thus purchased in GOE's name, for GOE, and installed on the Farm Property owned by LCD. Enterprise loan-tracking records further reflect reimbursements booked to GOE and Green Mart in connection with the greenhouse and farm buildout, confirming that the Debtor's and its affiliates' funds paid for the improvements now situated on LCD's land.

112. Notwithstanding that GOE's own 2023 tax return — prepared and transmitted for Lanphere's signature within days of the Petition Date — reflects these greenhouse assets as GOE's property, GOE's Schedule A/B, filed under penalty of perjury on July 26, 2024, discloses no greenhouse asset, no interest in improvements on the Farm Property, and no receivable, claim, or other interest relating thereto. Schedule A/B, Part 6 (farming and fishing-related assets), Part 8 (machinery, equipment, and vehicles), and Part 9 (real property) each answer "No," and Part 7 (office furniture, fixtures, and equipment) discloses only $5,793.00 in office equipment — none of which accounts for the greenhouse assets reflected on GOE's own contemporaneous tax filing.

113. On information and belief, the greenhouse improvements reflected on GOE's depreciation schedule are located upon, or were constructed for the benefit of, the Farm Property owned by LCD, and were transferred to, retained by, or otherwise inured to the benefit of LCD and/or Bob Lanphere without GOE receiving reasonably equivalent value, at a time when GOE was insolvent or was rendered insolvent thereby. The omission of these assets from GOE's bankruptcy schedules — filed within two weeks of the tax return acknowledging their existence — is a further badge of fraud and concealment evidencing the scheme alleged herein.

114. On information and belief, the transfer of the greenhouses occurred within the months preceding the Petition Date, and the transferee was LCD — the owner of the Farm Property — or,



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

in the alternative, Legacy, the successor entity operating cannabis production at the Farm Property. The precise date of the transfer and the identity of the transferee are matters peculiarly within the Defendants' knowledge and are not disclosed in the Debtor's schedules. Whether the greenhouses are characterized as GOE's removable trade fixtures and personal property or as improvements annexed to LCD's land, the transfer stripped value from the Debtor: in the former case, GOE's personal property was conveyed away without consideration; in the latter, GOE-funded improvements enriched LCD's realty without consideration to GOE.

115. The greenhouses were financed and built through a circular structure of Lanphere's and Bob Lanphere's design that served their interests at the enterprise's expense. Bob Lanphere, directly or through LCD or other entities he owned or controlled, loaned substantial sums into the enterprise to fund the buildout on the Farm Property that LCD, Bob Lanphere's own entity, owned — including the approximately $800,000 loan memorialized in the General Promissory Note dated August 6, 2018, in which Platinum Parachute Holdings, LLC promised to pay Robert D. Lanphere, Jr. that sum with interest at five percent, in monthly installments of $8,500. Douglas Lanphere alone determined which entity would serve as borrower on the loans Bob Lanphere made, as Bob Lanphere has himself testified. The existence, number, and magnitude of the Bob Lanphere-side obligations are confirmed by the December 18, 2020 demand letter from Brownstein Rask LLP, which itemized more than $1,436,000 in combined obligations asserted against PPH and running to LCD and Robert D. Lanphere, Jr. — including a $450,000 promissory note dated October 7, 2017, $352,000 in unpaid rent under a September 1, 2018 lease with LCD, and a further note of $662,874.66 dated August 1, 2020 — and which referenced a cross-default arrangement between Douglas Lanphere and Robert Lanphere, Jr. Those obligations were thereafter serviced and repaid, in whole or in part, out of the resources of the entities Lanphere and Bob Lanphere controlled —



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

through note payments, "farm rent," and related expenditures reflected in the enterprise's own payment records, including bill-pay records identifying GOE as the account holder on payments applied to obligations payable to LCD, and as further reflected in PPH's balance sheet dated August 12, 2023, which carried "Notes Payable - Bob Lanphere" at a reduced balance of $398,498.59 — or remain asserted against the Debtor's and its affiliates' estates, or both. In either event, the result is the same: Bob Lanphere's money returned, or stands to return, to the Bob Lanphere side of the ledger while the improvements it financed were affixed to, and retained by, land LCD owned.

116. GOE bore the cost of the greenhouse improvements. GOE's own IRS depreciation schedule and the Growers Supply/FarmTek sales order, described above, establish that GOE paid for the greenhouse structures and depreciated them on its own books. LCD leased the Farm Property at 26444 NE Butteville Road, Aurora, Oregon, to two of the Original Entities under two executed commercial leases, each signed by Robert D. Lanphere, Jr. as President of LCD and by Douglas Lanphere as President of the tenant entity: a lease with GOE, dated as of January 1, 2019, commencing June 1, 2019, for a five-year term at an initial monthly rent of $7,000; and a lease with Herban Renewal, LLC, dated as of April 1, 2019, commencing July 1, 2019, for a five-year term at an initial monthly rent of $8,000 (together, the "Farm Leases"). The Farm Leases are substantively parallel in their operative provisions. Under Section 5.2 of each Farm Lease, captioned "Ownership of Alterations," "[a]ll improvements and alterations performed on the leased premises by either Landlord or Tenant shall be the property of Landlord when installed, unless Landlord's written consent specifically provides otherwise"; and under Section 16.2 of each Farm Lease, fixtures placed upon the premises during the lease term, other than the tenant's trade fixtures, become the property of LCD at LCD's option, with any tenant property not timely



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

removed "considered an abandonment of the property" that LCD may retain. By operation of these provisions — including under GOE's own Farm Lease — the greenhouses and other improvements paid for by GOE became LCD's property immediately upon installation, without any default, forfeiture, or further act, and without any compensation to GOE. Other terms of the Farm Leases likewise depart from what an arm's-length tenant would accept, including Section 4.1, imposing on the tenant all maintenance, repair, and replacement obligations, structural and nonstructural, interior and exterior; Section 9.1(a), requiring repair at the tenant's expense even where the damage results from fault on the part of the landlord; Section 2.2, imposing automatic increases of $1,000 in the monthly rent on each anniversary of the lease; Section 13, absolutely prohibiting any assignment or sublease; and, in the Herban lease, Section 1.3, under which the tenant's "option" to renew exists only if "Tenant and Landlord agree on terms," rendering it illusory. On information and belief, Terry Wilson, the minority equity holder of the Original Enterprise, objected from the beginning to the construction of the greenhouses on the ground that they added no value to the Original Entities and were self-serving for Douglas Lanphere and Bob Lanphere; Wilson will so testify.

117. This arrangement is a further instance of Douglas Lanphere's and Bob Lanphere's disregard of corporate formalities and their use of the resulting confusion to benefit themselves: funds were loaned in the name of one entity, the cost of the resulting asset was booked to and depreciated by another (GOE), the improvement affixed to real property owned by a third (LCD), and the loans were serviced and repaid, in whole or in part, out of the enterprise's resources to Bob Lanphere and LCD, all without any decision-maker independent of Lanphere evaluating, negotiating, or approving the arrangements on behalf of GOE or any other Original Entity. To the extent GOE's funds paid for greenhouse and other improvements that were retained by or inured



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

to the benefit of LCD and Bob Lanphere without GOE receiving reasonably equivalent value, at a time when GOE was insolvent or was rendered insolvent thereby, the resulting disposition is a "transfer" within the meaning of 11 U.S.C. § 101(54) and ORS 95.200, avoidable and recoverable to the same extent as any other Transfer alleged herein, and a further badge of the fraud and adverse domination alleged herein.

118. The Trustee is entitled to recover from LCD and Bob Lanphere the value of the greenhouse assets as of the date(s) of their transfer, in addition to the other relief sought herein.

119. The recoverable amount is the greenhouses' fair market value at the time of their transfer, according to proof, which is not limited by, and may exceed, their depreciated book value; the cost or basis figures reflected in GOE's 2023 depreciation schedules establish the greenhouses' existence and GOE's ownership. Because the greenhouses were never scheduled and never abandoned by the Estate, they remain property of the Estate under 11 U.S.C. § 554(c) and (d) to the extent any purported transfer is avoided or was never effective. As to the greenhouses, the Trustee expressly elects recovery of value only: the Estate does not seek, and nothing in this Complaint shall be construed to seek, turnover of, possession of, or title to the greenhouse structures or any other cannabis-production property, and the claim asserted is for a money judgment in the amount of the fair market value of the greenhouses at the time of their transfer, according to proof.

120. On information and belief, Legacy also holds and uses in its production operations tangible personal property of the Debtor, including equipment, tools, tractors, and implements. The Debtor's ownership of such property is confirmed by the Insider Lien financing statement, which identifies as collateral "all equipment owed [sic] by Green Oregon Enterprises, Inc. or Platinum Parachute Holdings, LLC," together with a "Kabota [sic] Tractor Model L6060D Serial



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Number 45798," "tractor implements," store inventory and supplies, furniture, removable fixtures, computers and equipment, a "2017 Subaru Outback VIN 4S4BSETC2CH3298353," and a "2006 Freightliner Sprinter VIN WDYPD644065959109." That Lanphere claimed the same equipment as "owed" by either GOE or PPH, without distinguishing between them, is itself a further indicium of the disregard of corporate separateness alleged herein. Such property was transferred to or is used by Legacy and LCD without consideration to the Debtor and without authorization, and is recoverable by the Estate, or subject to turnover, together with the reasonable value of its use.

**Undisclosed Insider Distributions and Self-Dealing by Douglas Lanphere and Bob Lanphere**

121. Beginning as early as 2016 and continuing through at least March 2019, Lanphere caused GOE to issue a series of checks from GOE's Bank of America checking account payable directly to himself, aggregating not less than $465,599.50, and internally characterized in GOE's own books as "Loan Servicing Fee[s]" or repayments against a "Loan From Officer: L/P Shareholder Doug Lanphere" account. These payments include, without limitation, $75,000 on September 10, 2017; $75,000 on October 18, 2017; $75,000 on December 13, 2017; $25,000 on January 18, 2018; $25,000 on May 3, 2018; $50,000 on June 29, 2018; $25,000 on August 9, 2018; and $50,000 on September 19, 2018.

122. On information and belief, these payments were not bona fide loan repayments or servicing fees but were distributions of GOE's funds to Lanphere for his personal benefit, made without contemporaneous documentation of any underlying loan obligation sufficient to justify their amount or characterization, and without approval of GOE's full Board of Directors or shareholders.

123. In February and April 2020, Lanphere caused GOE's Board of Directors — then consisting of Lanphere and Bob Lanphere — to take a series of self-interested actions: on February



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

19, 2020, Lanphere, as majority shareholder, purported to authorize GOE to pay his personal litigation counsel; and at a subsequent board meeting, Lanphere and Bob Lanphere, voting together, approved an increase in Lanphere's compensation, approved a lump-sum back-pay award to Lanphere tied to that increase, and authorized GOE to execute a promissory note in favor of Lanphere to fund the back-pay award. Bob Lanphere resigned as a director of GOE on or about June 10, 2020, shortly after casting these votes. On June 25, 2020, Lanphere, using his status as GOE's majority shareholder, ratified all of the foregoing actions, including the compensation increase, the back-pay award, and the promissory note.

124. GOE's newly retained independent corporate counsel later determined that these self-dealing actions were improper: at a June 8, 2020 board meeting, GOE's Board of Directors voted to repeal the bylaw amendments that had enabled Lanphere's unilateral actions and to revoke the prior board resolution authorizing GOE to pay Lanphere's personal attorneys.

125. The scope of Lanphere's self-dealing escalated over time as it came to light through discovery: sworn pleadings filed in 2020 alleged that Lanphere had used enterprise funds to pay his personal attorney and personal credit cards in excess of $60,000.

126. None of the payments, compensation increases, back-pay awards, or promissory notes described in this section were disclosed in GOE's bankruptcy schedules or Statement of Financial Affairs as transfers to or for the benefit of an insider.

127. The pattern of payments to Lanphere continued into the periods reachable under the claims asserted herein. GOE's balance sheets separately carried "loans to Doug" of $234,727, growing to $268,939 through 2023, and combined loans from GOE and Green Mart to Lanphere of $343,939.67. The Insider Lien financing statement likewise recites purported "Loans to the Company between 2019 and 2023 in the Amount of $313,438.33." These records, and Lanphere's



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

own characterization of the payments as officer-loan servicing and repayment, establish both the pattern of self-dealing and that payments to Lanphere on account of purported antecedent loans continued into the periods reachable under the claims asserted herein. These amounts are inconsistent on their face: the financing statement Lanphere caused to be filed recites purported loans of $313,438.33, while the Debtor's Schedule D, signed by Lanphere under penalty of perjury, lists the claim secured by the same Insider Lien at $326,695.00. Lanphere's inability to state a consistent amount for his own purported loans — as between the financing statement and the sworn schedules — is itself evidence that the purported obligations were not bona fide, documented, arm's-length debt, and further supports the recharacterization alleged below.

128. In the alternative, the purported "loans" from Lanphere to the Debtor were not bona fide debt but were in substance capital contributions: on information and belief, they lacked ordinary indicia of debt, including fixed maturity, an enforceable repayment schedule, security, or arm's-length terms; they were advanced by the Debtor's controlling shareholder while the Debtor was thinly capitalized; and repayment was contingent in practice on the fortunes of the enterprise. The purported "repayments" to Lanphere were accordingly, in substance, distributions on equity — subject to ORS 60.181 and ORS 60.367 and avoidable as transfers for no reasonably equivalent value — and Lanphere's purported loan claims are subject to recharacterization as equity.

129. The specific dates, amounts, and recipients of all such distributions and payments are peculiarly within the Defendants' knowledge and control, and the Defendants' discovery responses defer production of the relevant records. The Trustee alleges, on information and belief, that the Debtor made distributions and transfers to or for the benefit of Lanphere and Bob Lanphere in amounts to be established through discovery, and asserts the claims herein as to all such transfers to the extent reachable under 11 U.S.C. §§ 547, 548, and 544(b) (including the ODR's extended



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

collection reach) and the discovery rule of ORS 95.280, and as to the whole of the pattern for purposes of the badges of fraud and the claims for unlawful distribution and breach of fiduciary duty. Such distributions, made while the Debtor was insolvent or that rendered the Debtor insolvent, were unlawful under ORS 60.181 and give rise to personal liability under ORS 60.367, in addition to being avoidable as fraudulent transfers.

**The Common Enterprise and the Routing of GOE Value to Bob Lanphere and LCD Through PPH**

130. Lanphere has repeatedly acknowledged, including in sworn testimony and in his conduct of the entities' affairs, that GOE, Green Mart, Herban, and PPH were operated interchangeably as a single common enterprise under his exclusive control. The Original Entities shared management, personnel, addresses, bank accounts, and bookkeeping; their funds were commingled and moved among them at Lanphere's direction without regard to corporate separateness; and Lanphere caused each of them to act for the benefit of the others and of himself and his affiliates as he saw fit. As alleged in the Fourteenth Claim for Relief, the Original Entities were operated as mere instrumentalities of Lanphere and of one another.

131. Within this common enterprise, Lanphere used PPH as a conduit to route value derived from GOE and the other Original Entities to Bob Lanphere and to LCD. The enterprise's own payment records reflect that GOE was named as the account holder on bill-pay records for a series of $15,000 monthly payments applied to a loan owed to LCD — specifically, payments reflected on bill-pay coupons identifying the account holder as "Green Oregon Enterprises Inc, 12745 SW Walker Road, Suite 100" and applied to the "Platinum Parachute Holdings Loan" payable to LCD. GOE-derived value was thereby used, directly and through PPH as a conduit, to satisfy obligations running to Bob Lanphere and LCD.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

132. The enterprise routed further value to the Bob Lanphere side through the same conduit structure, including monthly note payments of $8,500 and later $15,000 directed variously to LCD Holding, LLC, to LCD, LLC, to Lanphere Construction & Development, and to Robert D. Lanphere, Jr. personally — multiple payees, at overlapping Farmington Road addresses, for the same nominal obligations — together with recurring "farm rent" payments and the deployment of loan proceeds to construct the greenhouses and farm improvements purchased in GOE's name and installed on LCD's land. The specific amounts and the precise tracing of GOE-derived funds through PPH and the other conduit entities to Bob Lanphere and LCD are peculiarly within the Defendants' knowledge and control and will be established through discovery. The Trustee asserts the Estate's right to avoid and recover, as transfers of GOE's interest in property made directly or through PPH and the other commonly-controlled entities as conduits, all such value transferred to or for the benefit of Bob Lanphere and LCD, in amounts to be established through discovery and to the extent reachable under 11 U.S.C. §§ 544, 548, and 550 and the ODR's extended collection reach and the discovery rule of ORS 95.280.

133. Lanphere's use of GOE as an instrument for Bob Lanphere's benefit is further evidenced by a General Promissory Note dated August 1, 2015, in which GOE, Green Mart, "and any future affiliate company" promised to pay Robert D. Lanphere, Jr., and which provided that, at the lender's discretion, the outstanding debt "can be converted to 50% of the outstanding shares of said companies," with those shares assignable as the lender directed. The note, signed by Douglas Lanphere on behalf of GOE and Green Mart, gave Bob Lanphere a contractual path to seize half the equity of the Debtor and its affiliate at his election. Bob Lanphere also served on GOE's Board of Directors. The note and that board service further evidence the absence of arm's-length dealing and Bob Lanphere's insider relationship to the enterprise.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

**Complex Financial Transfer Network and Cross-Entity Agreements**

134. The transfer of the Original Enterprise from the Original Entities to the Successor Entities involved a network of financial transfers and formal agreements between entities controlled by Lanphere, Stricklin, Mr. Arbon, and Mrs. Arbon, revealed in Rule 2004 discovery in the Green Mart Bankruptcy Case.

135. The Transferee Defendants have themselves admitted the orchestrated character of these transactions. In their Answer filed June 22, 2026 in the Green Mart Adversary Proceeding (Adv. Proc. No. 26-03020-thp, Doc 45), Stricklin, Mr. Arbon, Mrs. Arbon, Arbon Enterprises, NW High, Legacy, and Abide admitted, among other things, that Lanphere established the Back-Office Entities and "attempted to use the Back-Office Entities to extract value from Arbon Enterprises, Inc. and to shield himself from liability"; that Lanphere "attempted to use various companies to defraud" them and others; that NW High processed credit card transactions for Arbon Enterprises; and, repeatedly, that Lanphere "defrauded each of them into signing various documents and agreements" — the same documents and agreements effectuating the Transfers alleged herein.

136. The continuity of Lanphere's control is further shown by his and Stricklin's conduct during the spring of 2024—months after the Original Entities' February 14, 2024 dissolution filings and during their purported wind-up—when they continued to transact licensing business with the OLCC using the Original Entities' own email accounts and corporate identities, for the purpose of standing up Arbon Enterprises as the successor operator at the Retail Location. In an email sent April 15, 2024 from the account doug@greenoregoninc.com, Lanphere wrote, "I am the license holder for the Green Mart," and pressed the OLCC to complete what he described as the "license surrender and transfer." In an email sent April 21, 2024 from the same GOE account, over a signature block reading "Douglas Lanphere, Green Oregon Enterprises, Inc., 12745 SW



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Walker Road, Suite 100," Lanphere reported to the OLCC that "there is an inspection of the site scheduled for Tuesday to make sure Arbon has all requisite conditions met to operate." In an email dated May 2, 2024, an OLCC licensing investigator directed that authorizations be provided for "Karen and Douglas, while Douglas' status as an applicant is being addressed," treating Lanphere as a putative applicant on the successor's license. And in an email sent June 5, 2024 from the account london@platinumparachute.com—an email account of PPH, another dissolved Original Entity—Stricklin identified himself as "London Stricklin from Arbon Enterprises LLC" in correspondence with the OLCC concerning the surrender of Green Mart's license. Throughout, the principals of the dissolved Original Entities used those entities' identities and infrastructure to advance the Successor Entities' licensing.

137. Bank statements and checks show that PPH transferred substantial funds to POT prior to filing for bankruptcy, which then made transfers to GPH. POT's banking records show transfers to GPH's accounts.

138. Mrs. Arbon, as sole member of NW High, testified that NW High processes credit card transactions for Arbon Enterprises and had no other function. She acknowledged transfers of funds from NW High to POT. Records demonstrate that NW High paid the filing fee for the Green Mart Bankruptcy Petition.

139. The replacement OLCC license under which Arbon Enterprises now operates the successor dispensary was acquired and pre-positioned at the Retail Location using debtor-side funds, months before any instrument purporting to transfer the Leasehold Interest was executed. On June 6, 2023, a Change of Ownership request was submitted to the OLCC with respect to the retail marijuana license of Oregon Grown, LLC, license no. 050-101460884BD (the "Oregon Grown License"), signed by Michael Bachara as owner; the change-over of that license to Arbon



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Enterprises proceeded under OLCC application Record ID 1024697EC50. On or about June 7, 2023, a Change in Location of Marijuana Premises request was submitted to relocate the Oregon Grown License to the Retail Location at 12745 SW Walker Road, Suite 100A, Beaverton, Oregon, and on June 8, 2023 the $1,000 change-of-location fee was paid to the OLCC on behalf of Oregon Grown LLC.

140. On June 20, 2023, Green Mart paid $5,150.00 by cashier's check to the OLCC in connection with the Oregon Grown License. The payment was drawn on Green Mart's operating account (Wauna Credit Union checking account ending 2314) and was recorded in Green Mart's own books of account as "Cashier ck to OLCC (Or Grwn)." Lanphere admitted this payment under oath: in a declaration executed under penalty of perjury on September 12, 2023, Lanphere declared that "Green Mart paid a $5,150 license renewal fee for an Oregon Grown retail license as a form of insurance in case Green Mart's license came into jeopardy." The enterprise thus acquired, at debtor-side expense and under the guise of "insurance," the very license later used to continue the business at the Retail Location once Green Mart's own license was allowed to lapse.

141. Bank records show that Perennial Operations Technology, LLC ("POT") made the payments to Michael Bachara, the owner of Oregon Grown, LLC, for the transfer of the Oregon Grown License to Arbon Enterprises. Specifically, on August 21, 2024—after the Petition Date—POT issued check no. 004079, payable to Bachara in the amount of $50,000.00, which posted on August 29, 2024; and on November 7, 2024, POT issued check no. 004085, payable to Bachara in the amount of $45,750.00, which posted on December 11, 2024. Both payments post-date the Petition Date, and the second posted contemporaneously with Abide's belated December 2024 ratification of the assignment of the Leasehold Interest. The enterprise was thus still assembling and paying for the successor structure months after the Petition Date, conduct irreconcilable with



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

any contention that the Leasehold Interest and the going-concern business had been transferred and settled before the Petition Date.

142. Further discovery documents show that on March 4, 2023, POT entered into an agreement with Abide (then managed by Mr. Arbon) and Arbon Enterprises (controlled by Stricklin) whereby POT would provide financial support to those entities.

143. On March 30, 2023, POT and GPH entered into an agreement whereby GPH would provide financial support and assistance to POT.

144. On March 1, 2024, POT entered into an agreement with Arbon Enterprises (controlled by Stricklin) to facilitate payroll services.

145. On April 30, 2024, GPH entered into an agreement with Arbon Enterprises (controlled by Stricklin) and Abide (then managed by Mr. Arbon) whereby GPH permitted those entities to utilize GPH's commercial credit card to pay their monthly recurring obligations.

146. On June 1, 2024, Abide (then managed by Mr. Arbon), GPH and GOE agreed that Abide and GPH would tender payments to the Department of Revenue on behalf of GOE for its outstanding obligations.

147. GPH historically made monthly payments to Lanphere individually and had an agreement with Abide and Arbon Enterprises to pay for health insurance coverage with Kaiser Permanente.

148. Documents produced in Rule 2004 discovery also show that POT adopted consent resolutions whereby POT would pay employees for services rendered on behalf of Arbon Enterprises (controlled by Stricklin), effective March 1, 2024.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

149. On November 1, 2024, POT passed a consent resolution whereby POT was authorized to deposit cash on behalf of Arbon Enterprises (controlled by Stricklin) into its accounts for the purpose of facilitating payments to Herring Bank.

150. Mr. Arbon, as Managing Member of Abide, executed the Lease Assignment transferring GOE's Leasehold Interest to Abide for $100,000 on January 25, 2024. Mr. Arbon executed a sublease from Abide to Arbon Enterprises (controlled by Stricklin) on March 4, 2024.

151. After Lanphere dissolved POT in February 2025, bank records show that Allied, formed by Lanphere in November 2024, received money from NW High (controlled by Mrs. Arbon) and uses those funds for payroll of employees of Arbon Enterprises (controlled by Stricklin).

152. As used in this Complaint, the "Transfers" means all transfers of interests of the Debtor in property alleged herein, including, without limitation: the transfer of the Leasehold Interest and the other Fraudulently Transferred Assets; the distributions and payments to and for the benefit of Lanphere, Bob Lanphere, and LCD; the transfers of the greenhouses and equipment; and the transfers made directly or through the conduit entities — in each case to the extent reachable under 11 U.S.C. §§ 544, 547, 548, or 549 and applicable law, including the ODR's extended collection reach and the discovery rule of ORS 95.280. The "Two-Year Transfers" means those Transfers made within two years before the Petition Date. The First and Second Claims for Relief are asserted as to the Two-Year Transfers; the Third and Fourth Claims for Relief are asserted as to all of the Transfers. The Trustee's investigation is ongoing, and the Debtor's books and records are incomplete, commingled with those of its affiliates, and in material part in the possession or control of the Defendants. The specific transfers itemized in this Complaint are illustrative of the categories of Transfers alleged, and the Trustee seeks to avoid and recover all



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

transfers of the Debtor's interests in property falling within the categories, and made to or for the benefit of the Transferees, identified herein, whether or not individually itemized, in amounts and on dates to be established through discovery and at trial.

**FIRST CLAIM FOR RELIEF**

**(Avoidance of Fraudulent Transfers and Recovery of Property or Value – Actual Fraud – 11 U.S.C. § 548(a)(1)(A) and 11 U.S.C. § 550(a))**

153. Plaintiff incorporates by reference all preceding paragraphs.

154. Within two years before the Petition Date, the Debtor transferred interests of the Debtor in property, including the Fraudulently Transferred Assets, to PPH, Herban, and the Transferee Defendants (the Two-Year Transfers, as defined above).

155. The Debtor made the Two-Year Transfers with the actual intent to hinder, delay, or defraud entities to which the Debtor was or became, on or after the date that such Two-Year Transfers were made, indebted.

156. The actual intent to defraud is evidenced by multiple badges of fraud, including: (a) the Two-Year Transfers were made to insiders — statutory and non-statutory — or to entities they control; (b) Lanphere retained possession, benefit, and de facto control of the transferred assets and the business conducted with them; (c) the Two-Year Transfers were concealed and mischaracterized, including in the Debtor's sworn bankruptcy schedules and SOFA (Schedule G disclosing no unexpired leases; SOFA Item 13 characterizing the leasehold as "surrendered on termination"; the omission of the $90,000 Abide note receivable from Schedule A/B; and "None"/"No" answers to insider-transfer questions); (d) before the Two-Year Transfers were made, the Debtor had been sued, was threatened with suit, and was subject to the Awards and the ensuing Judgment; (e) the Two-Year Transfers were of substantially all of the Debtor's assets; (f)



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

the stated consideration was circular and illusory, funded by Lanphere himself; (g) the Debtor was insolvent at the time of, or was rendered insolvent by, the Two-Year Transfers; and (h) the Debtor's books and records were shut down, removed to California, and withheld in violation of court order.

157. Pursuant to 11 U.S.C. § 548(a)(1)(A), Plaintiff is entitled to avoid the Two-Year Transfers, and pursuant to 11 U.S.C. § 550(a) Plaintiff is entitled to recover from the Defendants the property transferred — including the Leasehold Interest in specie — or, if the Court so orders, the value of the Fraudulently Transferred Assets, together with pre-judgment interest.

**SECOND CLAIM FOR RELIEF**

**(Avoidance of Fraudulent Transfers and Recovery of Property or Value – Constructive Fraud – 11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550(a))**

158. Plaintiff incorporates by reference all preceding paragraphs.

159. The Debtor received less than a reasonably equivalent value in exchange for the Two-Year Transfers. Specifically, GOE assigned its Leasehold Interest in the Retail Location, its management fee revenue stream, and its goodwill to the Successor Entities for no consideration or for a price grossly disproportionate to the fair market value of those assets. The stated $100,000 consideration for the Lease Assignment was funded by a loan from Lanphere himself, resulting in no independent value flowing into GOE.

160. The absence of reasonably equivalent value is confirmed by the structure of the Assignment Instrument itself: under Section 3, GOE remained fully and primarily liable for every obligation under the Lease, while the entire benefit of the Lease was conveyed to Abide. The Debtor retained all of the burdens of the Lease and surrendered all of its value — the antithesis of an exchange for reasonably equivalent value.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

161. No Transferee Defendant took the Fraudulently Transferred Assets, including the Leasehold Interest, for value and in good faith. The stated consideration was circular and was funded by Lanphere himself; the transfer instruments were executed by a signatory without authority to bind the transferee; and the Transferee Defendants have admitted in filed pleadings that Lanphere "defrauded each of them into signing" the very documents effectuating the Two-Year Transfers. The Transferee Defendants accordingly took with knowledge of, or in reckless disregard of, the circular and insider-controlled nature of the consideration and the voidability of the Two-Year Transfers, and no Transferee Defendant satisfies the elements of a good-faith transferee defense, including under 11 U.S.C. § 548(c), 11 U.S.C. § 550(b), or ORS 95.270.

162. At the time the Two-Year Transfers were made, GOE was insolvent, became insolvent as a result of the Two-Year Transfers, or was engaged in business with unreasonably small capital. By June 1, 2024, GOE no longer maintained any banking relationships and carried outstanding federal tax liabilities exceeding $116,000 and an Oregon Department of Revenue liability of $12,308.26. Following the Two-Year Transfers, GOE had no operating business, no bank accounts, no lease, no inventory, and no revenue-generating assets.

163. Pursuant to 11 U.S.C. § 548(a)(1)(B), Plaintiff is entitled to avoid the Two-Year Transfers, and pursuant to 11 U.S.C. § 550(a) Plaintiff is entitled to recover from the Defendants the property transferred — including the Leasehold Interest in specie — or, if the Court so orders, the value of the Fraudulently Transferred Assets, together with pre-judgment interest.

**THIRD CLAIM FOR RELIEF**

**(Avoidance of Fraudulent Transfers Under State Law – 11 U.S.C. § 544(b), ORS 95.230(1)(a), and ORS 95.260)**

164. Plaintiff incorporates by reference all preceding paragraphs.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

165. At all relevant times, there was at least one creditor of the Debtor holding an unsecured claim allowable under 11 U.S.C. § 502, including, without limitation, Terry Wilson (holder of the Judgment) and the Oregon Department of Revenue ("ODR") (holder of a claim of $12,308.26, which has been reduced to $4,221.98).

166. Pursuant to 11 U.S.C. § 544(b), Plaintiff may avoid any transfer of an interest of the Debtor in property that is voidable under applicable state law by such a creditor.

167. Under ORS 95.230(1)(a), the Transfers are voidable because they were made with actual intent to hinder, delay, or defraud creditors of the Debtor. Plaintiff relies on the badges of fraud alleged in the First Claim for Relief.

168. At all relevant times, including as of the Petition Date, the ODR held, and continues to hold, an allowable unsecured claim against the Debtor within the meaning of 11 U.S.C. § 544(b), having filed Proof of Claim No. 2 (as amended through Claim No. 2-2) in the GOE Bankruptcy Case on November 27, 2024, which claim has been reduced to $4,221.98 and remains unpaid as of the date of this Complaint. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by an actual, existing, unsecured creditor holding an allowable claim, and the Trustee is therefore entitled to stand in the shoes of the ODR and to invoke the collection reach available to the ODR under Oregon law. The Trustee's rights and powers under 11 U.S.C. § 544(b) are determined as of the Petition Date, on which date the ODR held its allowable unsecured claim. No post-petition payment, satisfaction, or reduction of the ODR's claim — including any payment made by or on behalf of any Defendant or any person acting in concert with any Defendant — impairs or extinguishes the Trustee's avoiding powers under 11 U.S.C. § 544(b).



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

169. Under Oregon law, a tax liability that is assessed and collectible by warrant is not subject to any fixed statute of limitations on collection. See OAR 150-314-0279; ORS 314.430. A warrant recorded under ORS 314.430 has the effect of a judgment, and the resulting lien, though subject to a ten-year period, may be renewed by court order without loss of priority.

170. Under Oregon law, the ODR's collection reach as to the Debtor's tax liability therefore extends to transfers made well beyond the four-year period specified in ORS 95.280. Because the Trustee may avoid under 11 U.S.C. § 544(b) any transfer the ODR could avoid, the Trustee may avoid the transfers alleged herein — including the insider distributions described above and the transfers to and for the benefit of Lanphere, Bob Lanphere, and the other Individual Defendants — made during the extended period reachable by the ODR, in addition to those reachable under 11 U.S.C. § 548 and the standard four-year period of ORS 95.280; in the alternative, and independent of the ODR's extended collection reach, the Transfers are avoidable under ORS 95.230(1)(a) within four years after each Transfer was made or, because the Transfers were concealed through the use of nominee entities, back-office conduits, sworn misstatements in the Debtor's bankruptcy filings, and other means alleged herein, within one year after the Transfers were or reasonably could have been discovered, pursuant to ORS 95.280(1). As alleged above, the Debtor could not have discovered or asserted claims with respect to the Transfers before the Trustee's appointment by reason of Lanphere's adverse domination of the Debtor, and the discovery periods under ORS 95.280 did not begin to run before that appointment.

171. Pursuant to 11 U.S.C. §§ 544(b) and 550(a), ORS 95.260, and ORS 95.270, Plaintiff is entitled to avoid the Transfers and to recover the property transferred — including the Leasehold Interest in specie — or, if the Court so orders, a money judgment in favor of the Estate against the



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

transferees and subsequent transferees in an amount equal to the value of the Fraudulently Transferred Assets, together with pre-judgment interest.

**FOURTH CLAIM FOR RELIEF**

**(Avoidance of Fraudulent Transfers Under State Law – 11 U.S.C. § 544(b), ORS 95.230(1)(b), ORS 95.240, and ORS 95.270)**

172. Plaintiff incorporates by reference all preceding paragraphs.

173. At all relevant times, there was at least one creditor of the Debtor holding an unsecured claim allowable under 11 U.S.C. § 502, as alleged in the Third Claim for Relief.

174. Pursuant to 11 U.S.C. § 544(b), Plaintiff may avoid any transfer of an interest of the Debtor in property that is voidable under applicable state law.

175. Under ORS 95.230(1)(b) and ORS 95.240, the Transfers are voidable because they were made without the Debtor receiving a reasonably equivalent value in exchange, and the Debtor was insolvent at the time or became insolvent as a result, or was engaged or about to engage in a business or transaction for which its remaining assets were unreasonably small.

176. Pursuant to ORS 95.270 and 11 U.S.C. § 550(a), Plaintiff is entitled to avoid the Transfers and to recover the property transferred — including the Leasehold Interest in specie — or, if the Court so orders, a money judgment against the Transferee Defendants and any subsequent transferees for the value of the Fraudulently Transferred Assets, plus pre-judgment interest and costs.

**FIFTH CLAIM FOR RELIEF**

**(Avoidance of Unauthorized Post-Petition Transfers – 11 U.S.C. § 549(a))**

177. Plaintiff incorporates by reference all preceding paragraphs.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

178. The Debtor commenced its Chapter 7 bankruptcy case on the Petition Date. Upon that filing, all legal and equitable interests of the Debtor in property became property of the Estate pursuant to 11 U.S.C. § 541.

179. First, and in the alternative to the First through Fourth Claims for Relief: to the extent the transfer of the Leasehold Interest was not executed, completed, or effective until after the Petition Date — as evidenced by, among other things, the undated execution of the Assignment Instrument and the December 2024 post-petition ratification of Abide's entry into the Lease Assignment and the Sublease — the Leasehold Interest was property of the Estate on the Petition Date, and its purported transfer to Abide, and Abide's purported sublease to Arbon Enterprises, are avoidable as unauthorized post-petition transfers of property of the Estate under 11 U.S.C. § 549(a).

180. Second, since the Petition Date, Defendants, including the Transferee Defendants and Back-Office Entities, have continued to possess, control, transfer, dissipate, and utilize (a) property of the Estate, including cash, accounts, and other proceeds generated from the operation of the Debtor's business, and (b) assets and interests that, upon avoidance of the Transfers alleged herein, are recoverable for the benefit of the Estate, including the Fraudulently Transferred Assets and the proceeds thereof. Defendants have used such property and proceeds to operate the retail enterprise and to make payments from such proceeds to the Individual Defendants and third parties.

181. None of the foregoing post-petition transfers was authorized by the Bankruptcy Court or the Bankruptcy Code.

182. Pursuant to 11 U.S.C. § 549(a), Plaintiff is entitled to avoid these unauthorized post-petition transfers and, as set forth in the Seventh Claim for Relief, pursuant to 11 U.S.C. § 550(a) Plaintiff is entitled to recover the property transferred — including the Leasehold Interest in specie



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

— or the value thereof, including the proceeds of the Fraudulently Transferred Assets, together with pre-judgment interest, from the Defendants.

**SIXTH CLAIM FOR RELIEF**

**(Avoidance of the Insider Lien and Preservation for the Estate – 11 U.S.C. §§ 547(b), 548(a)(1), 544(b), and 551 – Against Lanphere)**

183. Plaintiff incorporates by reference all preceding paragraphs.

184. The filing and perfection of the Insider Lien (Oregon Secretary of State Filing No. 93810414) was a transfer of an interest of the Debtor in property.

185. On information and belief, the Insider Lien was perfected (a) for or on account of an antecedent debt purportedly owed by the Debtor to Lanphere or an entity he owned or controlled before the transfer was made; (b) while the Debtor was insolvent; (c) within one year before the Petition Date, at a time when Lanphere was an insider of the Debtor; and (d) with the effect of enabling Lanphere to receive more than he would have received in a case under Chapter 7 had the transfer not been made and had he received payment of such debt to the extent provided by the Bankruptcy Code. The Insider Lien is avoidable as a preferential transfer under 11 U.S.C. § 547(b).

186. In the alternative, the grant and perfection of the Insider Lien was made with actual intent to hinder, delay, or defraud the Debtor's creditors, and/or was made without the Debtor receiving reasonably equivalent value in exchange while the Debtor was insolvent, and is avoidable under 11 U.S.C. § 548(a)(1) and under 11 U.S.C. § 544(b), ORS 95.230, and ORS 95.240.

187. Pursuant to 11 U.S.C. § 551, any avoided Insider Lien is preserved for the benefit of the Estate. Plaintiff is further entitled to an order declaring the Insider Lien void as against the Estate and directing the termination of Filing No. 93810414 of record.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

## SEVENTH CLAIM FOR RELIEF

## (Recovery of Avoided Transfers – 11 U.S.C. § 550)

188. Plaintiff incorporates by reference all preceding paragraphs.

189. Plaintiff is entitled to avoid the Transfers to PPH, Herban, and the Transferee Defendants pursuant to 11 U.S.C. §§ 544, 547, 548, and 549, as alleged in the First through Sixth Claims for Relief.

190. Pursuant to 11 U.S.C. § 550(a), upon avoidance Plaintiff is entitled to recover, for the benefit of the Estate, the property transferred — including, without limitation, the Leasehold Interest in specie, together with all renewal, extension, replacement, and holdover rights and all successor tenancies of the Retail Location derived therefrom — or, if the Court so orders, the value of such property.

191. Pursuant to 11 U.S.C. § 550(a)(1), Plaintiff is entitled to recover the Fraudulently Transferred Assets, or the value of such property, from PPH, Herban, Abide, and the Back-Office Entities (POT, GPH and Allied) as initial transferees of the Debtor's property or entities for whose benefit the Transfers were made.

192. The Back-Office Entities functioned as initial transferees and financial conduits through which the Debtor's assets and revenues were transferred to the Successor Entities.

193. Pursuant to 11 U.S.C. § 550(a)(2), Plaintiff is entitled to recover the Fraudulently Transferred Assets, or the value of such property, from the Successor Entities and any other Transferee Defendants as immediate or mediate transferees of the initial transferees. No Transferee Defendant is entitled to the protection of 11 U.S.C. § 550(b): as alleged herein, no Transferee Defendant took for value, in good faith, and without knowledge of the voidability of the Transfers.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

194. Pursuant to 11 U.S.C. § 550(a), Plaintiff is also entitled to recover the value of the Fraudulently Transferred Assets from the Individual Defendants, for whose benefit the Transfers were made. In addition, Plaintiff is entitled to recover from LCD and Bob Lanphere the value of the greenhouse assets described above, which constituted property of the Debtor's estate and was transferred without reasonably equivalent value.

195. Plaintiff is further entitled, pursuant to 11 U.S.C. § 550(a), to recover from Bob Lanphere and LCD the value of GOE's interest in property transferred to or for their benefit — whether directly or through PPH and the other commonly-controlled entities as conduits — as entities for whose benefit such transfers were made and as immediate or mediate transferees, in amounts to be established through discovery.

196. To the extent the Court orders recovery of value rather than the property itself, each Defendant is liable to the Estate under 11 U.S.C. § 550(a) for the value of the avoided Transfers that such Defendant received, that were made for such Defendant's benefit, or that such Defendant took as an immediate or mediate transferee, and Defendants liable with respect to the same Transfer are jointly and severally liable for the value of that Transfer, together with pre-judgment interest and costs; the Individual Defendants' joint and several liability for the full value of the Fraudulently Transferred Assets is further alleged in the Twelfth and Thirteenth Claims for Relief. Recovery of the Leasehold Interest in specie would not require the Estate to operate any cannabis business: the Leasehold Interest is an interest in real property, and the Estate's recovery and disposition of it may be accomplished without the Estate's possession, sale, or administration of any cannabis inventory or license.

## EIGHTH CLAIM FOR RELIEF

### (Declaratory Judgment – Alter Ego / Successor Liability)



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

197. Plaintiff incorporates by reference all preceding paragraphs.

198. A unity of interest and ownership exists between the Debtor and the Transferee Defendants such that the separate personalities of the entities no longer exist. The Debtor itself was directly injured by the conduct alleged herein: its assets were stripped, its funds depleted, and its business appropriated, giving rise to rights of action belonging to the Debtor and enforceable by the Trustee. Lanphere deliberately entangled the ownership, funding, and use of assets among the Original Entities and the Back-Office Entities, such that no clear or consistent record exists of which entity owned, paid for, or held title to which assets. That engineered confusion — created by Lanphere to place assets beyond the reach of creditors — is itself a ground for the declaratory and alter-ego relief sought in this claim.

199. Plaintiff seeks a judicial declaration that (a) Abide is a mere continuation of, and successor to, the Debtor with respect to the Leasehold Interest, and holds the Leasehold Interest subject to the claims of the Estate; (b) Abide is the alter ego of the Debtor as to the Leasehold Interest and the transfer thereof; and (c) the Leasehold Interest and, to the extent property of the Debtor, the non-cannabis personal property transferred as alleged herein—including without limitation vehicles, computers and other equipment, and the Debtor's trade names, telephone numbers, website, and associated goodwill—constitute, or are recoverable as, property of the Estate under 11 U.S.C. §§ 541 and 550; provided, that Plaintiff does not seek any declaration or relief that would require the Estate to take title to, possess, or administer any OLCC license or cannabis inventory, recovery of the going-concern cannabis operation being reserved for enforcement through a receivership under ORS chapter 37 and applicable OLCC authority.

## NINTH CLAIM FOR RELIEF

## (Turnover of Property of the Estate – 11 U.S.C. § 542)



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

200. Plaintiff incorporates by reference all preceding paragraphs.

201. As an alternative claim, pursuant to 11 U.S.C. § 542(a), Defendants are in possession, custody, or control of property of the Estate, including, upon the declarations and avoidances sought herein, the Leasehold Interest and the proceeds of the Fraudulently Transferred Assets. Defendants are required to account for and deliver to Plaintiff such property or the value of such property.

202. Further, pursuant to 11 U.S.C. § 542(a) and (e), Defendants, and each of them, are required to turn over to Plaintiff all books, records, documents, and recorded information, including electronic accounting records and QuickBooks data, relating to the Debtor's property or financial affairs — including the records that, as alleged herein, were removed to California and the accounting records that were shut down — wherever located and by whomever held.

**TENTH CLAIM FOR RELIEF**

**(Imposition of Constructive Trust / Unjust Enrichment)**

203. Plaintiff incorporates by reference all preceding paragraphs.

204. By receiving the Debtor's assets through a fraudulent scheme, Defendants have been unjustly enriched. LCD Holding, LLC and Bob Lanphere have been unjustly enriched by, among other things: receiving rent payments from Legacy and other entities funded by the fraudulently transferred enterprise's revenue stream; asserting claims against PPH's bankruptcy estate in varying and inconsistent amounts — including the approximately $800,000 in obligations running to Bob Lanphere or his entities reflected in PPH's sworn bankruptcy filings, and the claims of LCD Holding scheduled in the PPH case at $450,000 and $328,136.29 — the precise amounts and current balances of which are peculiarly within Defendants' knowledge; asserting an unsecured claim in the GOE Bankruptcy Case in the amount of $778,036.00, scheduled as based on "All



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Business Assets" — an amount nearly identical to the combined $778,136.29 in promissory-note claims of LCD Holding scheduled in the PPH case, such that, on information and belief, the same underlying obligations are being asserted against both estates; and receiving or retaining the value of the greenhouse assets described above without payment of reasonably equivalent value to GOE.

205. Plaintiff is entitled to the imposition of a constructive trust upon all assets, funds, and property traceable to the Debtor in the hands of the Defendants, including LCD and Bob Lanphere, and specifically including any tenancy, leasehold, renewal, extension, replacement, or holdover interest in the Retail Location now or hereafter held by any Defendant that is derived from, traceable to, or a successor of the Leasehold Interest, so that no lapse, renewal, restructuring, or re-papering of the tenancy defeats the Estate's recovery.

## ELEVENTH CLAIM FOR RELIEF

## (Accounting)

206. Plaintiff incorporates by reference all preceding paragraphs.

207. The financial affairs of the Debtor have been commingled with those of the Defendants. Plaintiff lacks complete information regarding the location of all misappropriated assets.

208. An accounting is necessary to trace the proceeds of the Debtor's property and determine the full extent of the Estate's interest.

## TWELFTH CLAIM FOR RELIEF

## (Civil Conspiracy to Defraud – Against the Individual Defendants, Including Bob Lanphere)

209. Plaintiff incorporates by reference all preceding paragraphs.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

210. Lanphere, Bob Lanphere, Stricklin, Mr. Arbon, and Mrs. Arbon entered into various arrangements to orchestrate the fraudulent transfer of the Debtor's assets to the Successor Entities and to conceal those Transfers from the Estate and its creditors. The conspiracy had as its objectives: (a) transferring the Debtor's entire retail enterprise, including its Leasehold Interest, location, goodwill, customer base, and revenue streams, to entities nominally controlled by the Individual Defendants for no or grossly inadequate consideration; (b) transferring the production operations from Herban to Legacy at the Farm Property owned by Bob Lanphere's entity, LCD, for no consideration; (c) placing the Debtor's assets beyond the reach of the Estate's creditors, including Wilson; and (d) ensuring that Lanphere retained de facto control of the successor business through the Back-Office Entities. Bob Lanphere furthered the conspiracy by providing the Farm Property for Legacy's operations. As alleged above, no Individual Defendant may invoke the Debtor's imputed conduct, including under the doctrine of in pari delicto, as a defense to this claim.

211. As a proximate result of the conspiracy, the Estate has been damaged in an amount to be proven at trial, but not less than the value of the Fraudulently Transferred Assets — assets of an enterprise whose fair value the arbitrator expressly found to be $5,000,000 as of December 31, 2020 — for which damages the Individual Defendants are jointly and severally liable, together with pre-judgment interest.

**THIRTEENTH CLAIM FOR RELIEF**

**(Aiding and Abetting Fraudulent Transfers – Against Stricklin, Mr. Arbon, Mrs. Arbon, and Bob Lanphere)**

212. Plaintiff incorporates by reference all preceding paragraphs.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

213. Lanphere, acting through the Debtor and the Original Entities, made the Transfers with the actual intent to hinder, delay, or defraud the Debtor's creditors, as alleged in the First and Third Claims for Relief.

214. Stricklin, Mr. Arbon, Mrs. Arbon, and Bob Lanphere each knew of the Judgment and the fraudulent purpose of the Transfers. Stricklin formerly served as the Director of Operations for Green Mart and Herban and was intimately familiar with the Original Enterprise's operations and value. Mr. Arbon was a former member of Green Mart, Herban, and GPH and had direct knowledge of the enterprise's value and the Judgment. Mrs. Arbon was a former member of Green Mart and PPH and had knowledge of the enterprise and the Judgment. Bob Lanphere is Douglas Lanphere's cousin, the owner of the Farm Property through LCD, and had a direct and ongoing relationship with the Original Enterprise through his lease of the Farm Property to Herban and subsequently to Legacy; upon information and belief, he was aware of the Judgment and the fraudulent purpose of the asset transfers.

215. With knowledge of Lanphere's fraudulent intent, Stricklin, Mr. Arbon, Mrs. Arbon, and Bob Lanphere each provided substantial assistance to Lanphere in effectuating the Transfers, including: (a) Stricklin formed the entity that received the Debtor's retail operations, applied for the substitute OLCC license, and continues to operate the successor retail business; (b) Mr. Arbon executed the Lease Assignment and Sublease that physically transferred the Debtor's retail location, signed cross-entity financial agreements with GPH, and managed Abide during the critical transfer period; (c) Mrs. Arbon, through NW High, processed all credit card revenue for the successor retail operation, authorized transfers of funds to POT and other Lanphere-controlled entities, and paid the filing fee for the Green Mart Bankruptcy Petition; and (d) Bob Lanphere, through LCD, leased the Farm Property to Legacy. As alleged above, none of Stricklin, Mr. Arbon,



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Mrs. Arbon, or Bob Lanphere may invoke the Debtor's imputed conduct, including under the doctrine of in pari delicto, as a defense to this claim.

216. As a proximate result of the substantial assistance provided by Stricklin, Mr. Arbon, Mrs. Arbon, and Bob Lanphere, the Estate has been damaged in an amount to be proven at trial, but not less than the value of the Fraudulently Transferred Assets — assets of an enterprise whose fair value the arbitrator expressly found to be $5,000,000 as of December 31, 2020 — for which damages Stricklin, Mr. Arbon, Mrs. Arbon, and Bob Lanphere are jointly and severally liable, together with pre-judgment interest.

## FOURTEENTH CLAIM FOR RELIEF

### (Piercing the Corporate Veil / Alter Ego – Against Lanphere Individually)

217. Plaintiff incorporates by reference all preceding paragraphs.

218. At all relevant times, Lanphere controlled the Original Entities and the Back-Office Entities. Lanphere was, at all times relevant to the Transfers, the sole member of Green Mart, PPH, Herban, POT, GPH, and Allied, and the sole shareholder of GOE, having been at all earlier times GOE's majority and controlling shareholder. Lanphere made all decisions regarding the dissolution of entities, the transfer of assets, and the formation of successor entities.

219. Lanphere exercised actual control of the Original Entities, Back-Office Entities and the Successor Entities. Lanphere used that control to disregard the separateness of the entities and used them as mere instrumentalities to self-deal and perpetuate a fraud to evade the Judgment. The indicators of alter ego include, without limitation: (a) Lanphere was the sole member or shareholder of each Original Entity and Back-Office Entity; (b) Lanphere commingled funds between and among the entities, using PPH's credit card revenue, NW High's proceeds, and GPH's accounts to pay personal expenses and the obligations of unrelated entities; (c) Lanphere made



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

personal withdrawals from Green Mart's checking account while the Judgment remained unsatisfied; (d) Lanphere used the alias "Philip Wesley" to conceal his ownership of POT; (e) Lanphere destroyed or transported financial records to California to evade court-ordered production; (f) the entities shared addresses, employees, and operational functions; (g) the entities were inadequately capitalized and existed primarily to facilitate the transfer of assets beyond the reach of Wilson's Judgment; and (h) Lanphere caused the Insider Lien to be perfected against the Debtor's assets in favor of himself or his affiliates. Lanphere's conduct is ongoing and he continues to profit from the assets and goodwill that are rightfully the Debtor's.

220. Adherence to the fiction of separate legal entities would sanction fraud and promote injustice. Lanphere used the entities as instrumentalities to transfer the Debtor's valuable retail enterprise beyond the reach of Wilson's Judgment while continuing to extract personal benefits from the successor operations.

221. As a result of Lanphere's conduct, the Original Enterprise was left insolvent and its creditors unpaid.

222. Plaintiff seeks a judicial declaration that the Original Entities and Back-Office Entities are the alter egos of Lanphere, and that Lanphere is personally liable for the debts and obligations of said entities to the Estate, including the Fraudulently Transferred Assets and all proceeds derived therefrom.

## FIFTEENTH CLAIM FOR RELIEF

## (Unlawful Distributions and Breach of Fiduciary Duty – ORS 60.181 and ORS 60.367 – Against Lanphere)

223. Plaintiff incorporates by reference all preceding paragraphs.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

224. GOE is an Oregon corporation. Lanphere was at all relevant times GOE's majority and controlling shareholder — and, following Wilson's divestiture effective December 31, 2020, its sole shareholder — and a director and officer of GOE, and owed fiduciary duties of care and loyalty to GOE and, once GOE was insolvent or in the vicinity of insolvency, to its creditors.

225. Lanphere caused GOE to make distributions and transfers of money and property to himself and to other insiders at times when GOE was insolvent, or that rendered GOE insolvent, or when GOE's total assets were less than the sum of its liabilities, in violation of ORS 60.181. Under ORS 60.367, a director who votes for or assents to a distribution made in violation of ORS 60.181 is personally liable to the corporation for the amount of the distribution that exceeds what could lawfully have been distributed.

226. Lanphere further breached his fiduciary duties to GOE by self-dealing, by diverting GOE's assets and business to entities he controlled, by causing GOE to grant him the Insider Lien on account of purported antecedent debt, and by stripping GOE of its assets to defeat the Judgment, all for his own benefit and to the detriment of GOE and its creditors.

227. All limitations periods applicable to this claim, including any period applicable under ORS 60.367, were tolled during Lanphere's adverse domination of the Debtor as alleged above. The Debtor had no shareholder, director, officer, or agent independent of Lanphere capable of discovering or asserting this claim before the Trustee's appointment, and this claim is timely under the discovery rule, the doctrine of adverse domination, and 11 U.S.C. § 108(a).

228. As a direct and proximate result, GOE and its Estate were damaged in an amount to be proven at trial, including the full amount of the unlawful distributions and the value of the assets and business diverted. Plaintiff, as Trustee, is entitled to recover such amounts from Lanphere for the benefit of the Estate, together with pre-judgment interest.



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

## SIXTEENTH CLAIM FOR RELIEF

## (Equitable Subordination, Recharacterization, and Disallowance – 11 U.S.C. §§ 510(c), 502(d), and 105(a))

229. Plaintiff incorporates by reference all preceding paragraphs.

230. Lanphere, and any Defendant asserting a claim against the Estate, engaged in inequitable conduct as alleged herein, including self-dealing, the stripping of the Debtor's assets, the concealment and mischaracterization of transfers in sworn filings, and the taking of the Insider Lien on the eve of dissolution. That conduct injured the Debtor's creditors and conferred an unfair advantage on the claimants, and subordination is consistent with the Bankruptcy Code. Pursuant to 11 U.S.C. § 510(c), any claim asserted by Lanphere, Bob Lanphere, LCD, or any Transferee Defendant or Back-Office Entity should be subordinated to the claims of all general unsecured creditors of the Estate, and any lien securing any such claim should be transferred to the Estate.

231. In the alternative, Lanphere's purported loan claims should be recharacterized as equity contributions for the reasons alleged above, and disallowed as claims against the Estate.

232. Further, pursuant to 11 U.S.C. § 502(d), any claim of any Defendant that is a transferee of a transfer avoidable under 11 U.S.C. §§ 544, 547, 548, or 549, or that is liable under 11 U.S.C. § 550, must be disallowed unless and until such Defendant has paid the amount, or turned over the property, for which such Defendant is liable.

## SEVENTEENTH CLAIM FOR RELIEF

## (Breach of Promissory Note – Against Abide – In the Alternative)

233. Plaintiff incorporates by reference all preceding paragraphs.

234. In the alternative, and to the extent the Lease Assignment is not avoided: under the Promissory Note dated January 25, 2024, Abide promised to pay $90,000 to GOE as Payee. The



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

Promissory Note is property of the Estate under 11 U.S.C. § 541, notwithstanding its omission from the Debtor's Schedule A/B. On information and belief, Abide has failed to pay the amounts due under the Promissory Note, and no payment on the Promissory Note has been received by or for the benefit of the Estate.

235. Abide is in breach of the Promissory Note, and Plaintiff is entitled to judgment against Abide for all unpaid principal and interest due under the Promissory Note, in an amount to be established at trial but not less than $90,000, together with pre-judgment interest and any attorney fees recoverable under the Promissory Note or applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendants and grant the following relief:

A. On the First Claim for Relief, enter judgment avoiding the Two-Year Transfers of the Debtor's interests in property, including the transfer of the Leasehold Interest, as transfers made with actual intent to hinder, delay, or defraud creditors, pursuant to 11 U.S.C. § 548(a)(1)(A), and, pursuant to 11 U.S.C. § 550(a), ordering the recovery, for the benefit of the Estate, of the property transferred — including, without limitation, the Leasehold Interest in specie, together with all renewal, extension, replacement, and holdover rights and all successor tenancies of the Retail Location derived therefrom — or, if the Court so orders, the value of such property, together with pre-judgment interest;

B. On the Second Claim for Relief, enter judgment avoiding the Two-Year Transfers as constructively fraudulent transfers made for less than reasonably equivalent value while the Debtor was insolvent, was rendered insolvent, or was left with unreasonably small capital, pursuant to 11 U.S.C. § 548(a)(1)(B), and, pursuant to 11 U.S.C. § 550(a), ordering the recovery, for the benefit



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

of the Estate, of the property transferred — including, without limitation, the Leasehold Interest in specie, together with all renewal, extension, replacement, and holdover rights and all successor tenancies of the Retail Location derived therefrom — or, if the Court so orders, the value of such property, together with pre-judgment interest;

C. On the Third Claim for Relief, enter judgment avoiding the Transfers pursuant to 11 U.S.C. § 544(b) and ORS 95.230(1)(a) as transfers made with actual intent to hinder, delay, or defraud creditors, and, pursuant to 11 U.S.C. § 550(a), ORS 95.260, and ORS 95.270, ordering the recovery of the property transferred — including the Leasehold Interest in specie — or, if the Court so orders, a money judgment in favor of the Estate against the transferees and subsequent transferees in an amount equal to the value of the Fraudulently Transferred Assets, together with pre-judgment interest;

D. On the Fourth Claim for Relief, enter judgment avoiding the Transfers pursuant to 11 U.S.C. § 544(b), ORS 95.230(1)(b), and ORS 95.240 as transfers made without the Debtor receiving reasonably equivalent value while insolvent or inadequately capitalized, and, pursuant to ORS 95.270 and 11 U.S.C. § 550(a), ordering the recovery of the property transferred — including the Leasehold Interest in specie — or, if the Court so orders, a money judgment against the Transferee Defendants and any subsequent transferees for the value of the Fraudulently Transferred Assets, together with pre-judgment interest and costs;

E. On the Fifth Claim for Relief, and in the alternative to the relief sought on the First through Fourth Claims for Relief as to transfers made before the Petition Date, enter judgment avoiding, pursuant to 11 U.S.C. § 549(a), all unauthorized transfers of property of the Estate made after the commencement of the bankruptcy case, including — to the extent the transfer of the Leasehold Interest was not executed, completed, or effective until after the Petition Date — the



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

purported transfer of the Leasehold Interest to Abide and Abide's purported sublease to Arbon Enterprises, as well as Defendants' post-petition transfers, dissipation, and use of Estate cash, accounts, and proceeds, and, pursuant to 11 U.S.C. § 550(a), ordering the recovery of the property transferred or the value thereof, including the proceeds of the Fraudulently Transferred Assets, together with pre-judgment interest;

F. On the Sixth Claim for Relief, enter judgment against Lanphere avoiding the Insider Lien (Oregon Secretary of State Filing No. 93810414) pursuant to 11 U.S.C. §§ 547(b), 548(a)(1), and 544(b), preserving the avoided lien for the benefit of the Estate pursuant to 11 U.S.C. § 551, declaring the Insider Lien void as against the Estate, and directing the termination of the financing statement of record;

G. On the Seventh Claim for Relief, pursuant to 11 U.S.C. § 550(a) and/or ORS 95.270, order the recovery and restoration to the Estate of the property transferred — including, without limitation, the Leasehold Interest in specie, together with all renewal, extension, replacement, and holdover rights and all successor tenancies of the Retail Location derived therefrom — from the Defendants as initial transferees, immediate or mediate transferees, and/or entities for whose benefit the Transfers were made, or, if and only to the extent the Court so orders, enter a money judgment in favor of Plaintiff against each Defendant for the value of the avoided Transfers that such Defendant received, that were made for such Defendant's benefit, or that such Defendant took as an immediate or mediate transferee — Defendants liable with respect to the same Transfer being jointly and severally liable for the value of that Transfer — or the proceeds thereof, together with pre-judgment interest and costs;

H. On the First through Seventh Claims for Relief, avoid the transfers of the Debtor's greenhouses located on the Farm Property and enter a money judgment against LCD and/or Legacy



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

for the fair market value of the greenhouses at the time of their transfer, according to proof, expressly without turnover of, or the Estate taking possession of or title to, the greenhouses or any other cannabis-production property, and order the turnover of the Debtor's equipment, tractors, and implements identified in the Insider Lien financing statement, or the value thereof;

I. On the Eighth Claim for Relief, enter a judgment declaring that (i) Abide is a mere continuation of, and successor to, the Debtor with respect to the Leasehold Interest, and holds the Leasehold Interest subject to the claims of the Estate; (ii) Abide is the alter ego of the Debtor as to the Leasehold Interest and the transfer thereof; and (iii) the Leasehold Interest and, to the extent property of the Debtor, the non-cannabis personal property transferred as alleged herein — including without limitation vehicles, computers and other equipment, and the Debtor's trade names, telephone numbers, website, and associated goodwill — constitute, or are recoverable as, property of the Estate under 11 U.S.C. §§ 541 and 550; provided, that Plaintiff does not seek any declaration or relief that would require the Estate to take title to, possess, or administer any OLCC license or cannabis inventory, recovery of the going-concern cannabis operation being reserved for enforcement through a receivership under ORS chapter 37 and applicable OLCC authority;

J. On the Ninth Claim for Relief, order the Transferee Defendants and Individual Defendants, pursuant to 11 U.S.C. § 542, to turn over to Plaintiff all property of the Estate currently in their possession, custody, or control, or the value thereof, including the Leasehold Interest, the Fraudulently Transferred Assets, and revenue generated from the misappropriated business operations, and to account for such property, and, pursuant to 11 U.S.C. § 542(a) and (e), to turn over all books, records, documents, and recorded information, including electronic accounting records and QuickBooks data, relating to the Debtor's property or financial affairs, wherever located and by whomever held; provided that nothing herein requires the Estate to take possession



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

of cannabis inventory, any OLCC license, or the greenhouses or any other cannabis-production property, as to which the Estate seeks value only;

K. On the Tenth Claim for Relief, impose a constructive trust, for the benefit of the Estate, on all assets, funds, and property held by the Defendants, including LCD and Bob Lanphere, that trace back to the Debtor or its operations, including any tenancy, leasehold, renewal, extension, replacement, or holdover interest in the Retail Location derived from or traceable to the Leasehold Interest, so that no lapse, renewal, restructuring, or re-papering of the tenancy defeats the Estate's recovery; provided that, as to the greenhouses, cannabis inventory, any OLCC license, or any other cannabis-related or cannabis-production property, such constructive trust shall attach only to the value and proceeds thereof, and nothing herein requires the Estate to take possession of or title to any such property;

L. On the Eleventh Claim for Relief, order the Transferee Defendants and Individual Defendants to provide a full accounting of (a) all funds transferred between the Debtor and any of the Transferee Defendants and/or Individual Defendants, (b) all financial transactions related to the surrender and re-acquisition of the retail license, and (c) any financial transactions (which shall include, but not be limited to, loans, loan repayments, payroll payments, or expense reimbursements) between the Debtor and any one or more of the Individual Defendants or Transferee Defendants, which have occurred at any time since January 1, 2023;

M. On the Twelfth Claim for Relief, enter a money judgment against the Individual Defendants, including Bob Lanphere, jointly and severally, for damages proximately caused by their civil conspiracy to defraud the Estate, in an amount to be proven at trial but not less than the value of the Fraudulently Transferred Assets — assets of an enterprise whose fair value the



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

arbitrator expressly found to be $5,000,000 as of December 31, 2020 — together with pre-judgment interest;

N. On the Thirteenth Claim for Relief, enter a money judgment against Stricklin, Mr. Arbon, Mrs. Arbon, and Bob Lanphere, jointly and severally, for damages proximately caused by their aiding and abetting of the fraudulent transfers, in an amount to be proven at trial but not less than the value of the Fraudulently Transferred Assets — assets of an enterprise whose fair value the arbitrator expressly found to be $5,000,000 as of December 31, 2020 — together with pre-judgment interest;

O. On the Fourteenth Claim for Relief, enter a judicial declaration that the Original Entities and Back-Office Entities are the alter egos of Lanphere, and that Lanphere is personally liable for the debts and obligations of said entities to the Estate, including the Fraudulently Transferred Assets and all proceeds derived therefrom;

P. On the Fifteenth Claim for Relief, enter a money judgment against Lanphere for the unlawful distributions and breaches of fiduciary duty alleged herein, pursuant to ORS 60.367 and applicable law, in an amount to be proven at trial, together with pre-judgment interest;

Q. On the Sixteenth Claim for Relief, subordinate, pursuant to 11 U.S.C. § 510(c), any claim asserted against the Estate by Lanphere, Bob Lanphere, LCD, or any Transferee Defendant or Back-Office Entity, and transfer any lien securing any such claim to the Estate; recharacterize Lanphere's purported loan claims as equity contributions; and disallow, pursuant to 11 U.S.C. § 502(d), any claim of any Defendant that is liable under 11 U.S.C. § 550 unless and until such liability is satisfied;

R. On the Seventeenth Claim for Relief, in the alternative and to the extent the Lease Assignment is not avoided, enter a money judgment against Abide for all unpaid principal and



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

interest due under the January 25, 2024 Promissory Note, in an amount to be established at trial but not less than $90,000, together with pre-judgment interest and any attorney fees recoverable under the Promissory Note or applicable law;

S. On all Claims for Relief, issue a temporary restraining order, preliminary injunction, and/or permanent injunction under 11 U.S.C. § 105(a) and Rule 7065 of the Federal Rules of Bankruptcy Procedure enjoining the Defendants, and all persons acting in concert with them, from assigning, transferring, subleasing, encumbering, surrendering, terminating, or otherwise disposing of or impairing the Leasehold Interest or any tenancy of the Retail Location derived therefrom, pending the resolution of this action — relief that preserves the status quo that Section 3 of the Assignment Instrument itself requires by prohibiting any further transfer of the Lease without the Master Lessor's consent — and preserving such property, in which the Estate claims a specific interest, for the benefit of the Estate;

T. On all Claims for Relief, award Plaintiff her reasonable attorney fees and costs incurred in prosecuting this adversary proceeding, including pursuant to Section 8 of the Assignment Instrument — which provides that the prevailing party in any proceeding, including any proceeding brought under the United States Bankruptcy Code, to interpret, enforce, or rescind the Assignment Instrument or otherwise with respect to its subject matter, is entitled to recover reasonable attorney fees — as made reciprocal and enforceable by ORS 20.096, and to the fullest extent otherwise permitted by law; and

//

//

//

//



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373

U. On all Claims for Relief, grant such other and further relief as the Bankruptcy Court deems just and equitable under the circumstances.

Dated this 10th day of July, 2026.

JORDAN RAMIS PC

By: ______________________________

Learon John Bird, OSB #176218
Russell D. Garrett, OSB #882111

*Attorneys for Candace Amborn, Trustee*



JORDAN RAMIS PC
Attorneys at Law
1211 SW Fifth Avenue, 27th Floor
Portland, Oregon 97204
Telephone: (503) 598-7070 Fax: (503) 598-7373